**21-1695**

# United States Court of Appeals For the Federal Circuit

**GORGE DESIGN GROUP LLC, KIRBY ERDELY,**

*Plaintiffs-Appellees,*

**v.**

**MEANING XUANSHENG,**

*Defendant*

**NEOMAGIC CORPORATION, DBA WWW.MERCADOMAGICO.COM,**

*Defendant-Appellant.*

*Appeal from the United States District Court for the Western District of Pennsylvania No. 2:20-cv-01384-WSS, Judge William S. Stickman IV*

**APPELLANT NEOMAGIC CORPORATION'S OPENING BRIEF**

Andrew T. Oliver
**AMIN, TUROCY & WATSON LLP**
160 West Santa Clara Street
Suite 975
San Jose, CA 95113
(650) 618-6477

October 25, 2021

*Attorneys for Defendant-Appellant NeoMagic Corporation*

## Language of Patent Claims at Issue

## Fed. Cir. R. 28(a)(12)

'198 patent claim 1:

A tie down comprising:

a shaft;

a plurality of threads operatively disposed on an exterior of said shaft;

a head, said head defining an arcuate exterior surface, said head further defining a bore therethrough extending through a width of the head; and,

a sleeve positionable between a first position as a sheath engaging an exterior of the shaft and a second position wherein said sleeve is inserted through said bore.

'198 patent claim 5:

A tie down comprising:

a shaft;

a plurality of threads having a wind angle relative to said shaft of about 45° and operatively disposed on an exterior of said shaft, said threads having a thickness of about 0.5 inches and providing an outer diameter of said threads and said shaft of substantially about 1.2 inches;

a head defining an arcuate exterior surface, said head further defining a bore therethrough extending through a width of the head; and,

a sleeve positionable between a first position as a sheath engaging an exterior of the shaft and a second position wherein said sleeve is inserted through said bore.

# Certificate of Interest

Counsel for Appellant NeoMagic Corporation certifies the following:

1.     The full name of every Party represented by me is:

- NeoMagic Corporation

2.     The name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is:

- NeoMagic Corporation

3.     Parent corporations and publicly held companies that own 10% or more of stock in the party:

- None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

- Kent E. Baldauf, Jr. and David A. DuMont of The Webb Law Firm

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  *See* Fed. Cir. R. 47.4(a)(5) and 47.5(b).

- None.

6.     Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

- None.

Dated: October 25, 2021

/s/ *Andrew T. Oliver*

Andrew T. Oliver
*Attorney for Appellant*
*NeoMagic Corporation*

# Table of Contents

Table of Authorities ................................................................. 6

Table of Abbreviations ........................................................... 8

Statement of Related Cases ................................................... 9

Statement of Jurisdiction ...................................................... 9

Statement of Issues ............................................................... 10

Statement of the Case ........................................................... 11

Summary of the Argument .................................................... 13

Argument ............................................................................... 16

Standard of Review ............................................................... 16

I.      All of Plaintiffs' Claims Against NeoMagic Were Frivolous ...................... 17

        A.      Gorge's Trademark Claim Against NeoMagic Was Frivolous .......... 18

        B.      Gorge's Copyright Claim Against NeoMagic Was Frivolous ............ 22

        C.      Gorge's Unfair Competition Claim Against NeoMagic Was
                Frivolous ................................................................... 24

        D.      Gorge's Patent Claim Against NeoMagic Was Frivolous ................. 30

II.     Gorge and Its Attorneys Engaged In Multiple Acts of Litigation
        Misconduct and/or Vexatious Litigation ...................................... 35

        A.      Improper Motion to Seal the Case ...................................... 42

        B.      Gorge Did Not Show Any Irreparable Harm When Obtaining
                An Abusive Restraining Order ............................................ 44

        C.      Overreaching and Oppressive Discovery ............................... 47

        D.      Gorge Secured An Overreaching TRO on an Insufficient
                Bond .......................................................................... 50

        E.      Gorge Improperly Delayed Service ...................................... 51

F.      Gorge's Extortive Settlement Tactics ...................................52

G.      Gorge Knowingly Filed in an Improper Venue ...................55

H.      Gorge Further Made Baseless Statements in an Attempt to
        Manufacture Jurisdiction and Failed to Comply With Rule 12
        in Other Ways.................................................................58

I.      Gorge Improperly Joined NeoMagic With Almost 40
        Defendants.....................................................................60

III.    The District Court Abused Discretion and Erred in Finding That
        Gorge's Conduct Should Not Be Sanctioned ................................62

A.      The Court's Inherent Power .............................................64

A.      28 U.S.C. §1927 ............................................................65

B.      42 Pa. C.S.A. §2503 .......................................................68

C.      35 U.S.C. §285; 15 U.S.C. §1117; 17 U.S.C. §505 ...........................69

        1.      NeoMagic Did Prevail .............................................70

        2.      35 U.S.C. §285.....................................................73

        3.      Section 35(a) of the Lanham Act – 15 U.S.C. §1117(a)...........74

        4.      17 U.S.C. §505.....................................................75

IV.     Amount of Fees................................................................77

V.      Conclusion and Relief Sought .................................................77


Addendum

Certificate of Compliance

Certificate of Service

# Table of Authorities

## Cases

*Am. Bd. Of Internal Med. v. Von Muller*, 540 Fed. Appx. 103 (3rd Cir. 2013) ......75

*ARP Wave, Ltd. Liab. Co. v. Salpeter*, 364 F. Supp. 3d 990 (D. Minn. 2019)........55

*Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991)...........................................................64

*ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291 (Fed. Cir. 2009) ..17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)........ 28, 29

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303 (3d Cir. 2014) .......................74

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) .......................................................75

*Ford v. Temple Hospital*, 790 F.2d 342 (3rd Cir. 1986).........................................64

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019)...22, 28

*Fun-Dumental Too, Ltd. v. Universal Music Grp., Inc.*, No. 97-1595, 1997 U.S. Dist. LEXIS 9597 (E.D. Pa. July 8, 1997)............................................................28

*Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423 (1974)........................................................................................................45

*Hall v. Cole*, 412 U.S. 1 (1973)................................................................................64

*In re Prudential Ins. Co. Sales Practice Litigation Agent Actions*, 278 F.3d 175 (3d Cir. 2002)...................................................................................... 65, 67

*J&J Snack Foods, Corp. v. Earthgrains Co.*, Civil Action No. 00-6230(JBS), 2003 U.S. Dist. LEXIS 8040 (D.N.J. May 9, 2003) ......................................................74

*Nystrom v. Trex Co.*, 424 F.3d 1136 (Fed. Cir. 2005) ............................................17

*O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990 (Fed. Cir. 2020) ................................................................................................. 17, 71

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014)  73, 74

*Preston Grp., LLC v. Customers Bank*, No. 5:20-cv-06516, 2021 U.S. Dist. LEXIS 151818 (E.D. Pa. Aug. 12, 2021) .......................................................................22

*Rainiere v. Microsoft Corp.*, 887 F.3d 1298 (Fed. Cir. 2018) ................................72

*Reese v. Spring Nextel Corp.*, No. 2:13-cv-3811-ODW(PLAx), 2013 U.S. Dist. LEXIS 98635 (C.D. Cal. July 15, 2013) ..............................................................61

*Richmond v. Lumisol Elec. Ltd.*, No. 13-1944 (MLC), 2014 U.S. Dist. LEXIS 90541 (D.N.J. July 3, 2014)..............................................................................61

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ...........................74

*Stone Basket Innovations, LLC v. Cook Med. LLC*, 992 F.3d 1175 (Fed. Cir. 2018) ...................................................................................................................73

*ThermoLife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019)..................73

*Thunberg v. Strause, 545 Pa. 607, 615, 682 A.2d 295 (Pa. 1996)* ......................... 69

*Transonic Sys. v. Non-Invasive Med. Techs. Corp., 75 F. App'x 765 (Fed. Cir. 2003)* ........................................................................................................ 16

*Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F.2d 299 (2d Cir. 1981)* ....... 27

*Waldman Publ'g Corp. v. Landoll, Inc., 848 F.Supp. 498 (S.D.N.Y. 1994)* ........... 28

*Walker v. Health Intern. Corp., 845 F.3d 1148 (Fed. Cir. 2017)* .......................... 64

*Waymark Corp. v. Porta Sys. Corp., 334 F.3d 1358 (Fed. Cir. 2003)* ................... 16

*Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll., 103 F.3d 294 (3d Cir. 1996)* ...... 17

## Statutes

*15 U.S.C. §1116* ..................................................................................................... 19

*15 U.S.C. §1117* ............................................................................................... 69, 74

*15 U.S.C. 1127* ...................................................................................................... 19

*17 U.S.C. §505* ................................................................................................ 69, 75

*28 U.S.C. §1927* .................................................................................................... 67

*35 U.S.C. §285* ................................................................................................ 69, 73

*35 U.S.C. §299* ................................................................................................ 61, 61

*42 Pa. C.S.A §2503* ............................................................................................... 68

## Rules

*Fed. R. Civ. P. 26* .................................................................................................. 49

*Fed. R. Civ. P. 4* ............................................................................................... 59, 66

*Fed. R. Civ. P. 65* ...................................................................................... 38, 45, 46

## Table of Abbreviations

'198 Patent        Asserted U.S. Patent No. 7,309,198 (Appx015-021)

NeoMagic        Defendant-Appellant NeoMagic Corporation (referred to by Plaintiff-Appellee as "MercadoMagico"

Gorge        Plaintiffs-Appellees Gorge Design Group, LLC and Kirby Erdely

## Statement of Related Cases

NeoMagic Corporation ("NeoMagic") is not aware of any pending court or agency case that will directly affect or be directly affected by the Court's decision in this appeal.

## Statement of Jurisdiction

The district court had jurisdiction under 15 U.S.C. §1121, 28 U.S.C. §§ 1331, 1332, and 1338, and 28 U.S.C. §1367. Appx032. The district court entered the appealed order denying attorneys' fees on December 4, 2020. Appx001-012. NeoMagic timely filed a notice of appeal on December 22, 2020. Appx875 (at ECF No. 80). On April 9, 2021, the district court certified that the plaintiffs' notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) was a final judgment pursuant to Fed. R. Civ. P. 54(b). Appx013-014.

This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

**Statement of Issues**

1.      Whether the district court clearly erred and/or abused discretion in determining that each of Gorge's causes of action were not baseless or frivolous;

2.      Whether the district court clearly erred and/or abused discretion in determining that Gorge and its attorneys did not engage in bad faith litigation, vexatious litigation, and/or litigation misconduct; and

3.      Whether the district court clearly erred and/or abused discretion in refusing to sanction Gorge and its attorneys.

## Statement of the Case

(To avoid confusion, NeoMagic notes to this Court that throughout the district court proceedings, Gorge and its attorneys referred to NeoMagic as "mercadomagico."  References by Gorge to "mercadomagico" are references to NeoMagic.)

There can be no doubt that the federal courts have the ability, possibly even the mandate, to protect defendants from facially frivolous lawsuits and egregious litigation tactics coupled with extortive settlement demands, regardless of how short or long the lawsuit lasts.  Here, NeoMagic asked the district court to require Gorge and its attorneys to reimburse NeoMagic's reasonable attorneys fees after they subjected NeoMagic to a short barrage of sealed litigation intended to secretly shut down NeoMagic's business, seize NeoMagic's marketplace (typically listing more than 100,000 products daily), and freeze NeoMagic's funds (in excess of $300,000) based upon the sale of a single unit of a $4.99 product; where the purchase was made by Gorge's own attorneys; and no one else bought this product. After NeoMagic was able to pull back the curtain an inch and expose the wholly frivolous nature of the claims through which Gorge and its attorneys undertook a sealed lawsuit to shut down NeoMagic's marketplace, Gorge still demanded payment of $9,500 for Gorge to release the over $300,000 of NeoMagic money that remained frozen (crippling NeoMagic's ability to do business).

NeoMagic didn't ask the district court to enter punitive sanctions against Gorge. NeoMagic merely wishes to be returned part way back to the position that it was in before the frivolous and vexatious litigation. Because there is some ambiguity as to the best authority under which the district court could do so, NeoMagic suggested several different authorities under which sanctions would be appropriate. Rather than granting any sanction, the district court erroneously refused to meaningfully look at whether the case was baseless or whether Gorge and its attorneys engaged in vexatious litigation or litigation misconduct.

The district court appears to condone this misconduct, because it entered a temporary restraining order without a critical look that would have established (a) there is no registered copyright, (b) 2/3 of the defendants can't infringe the unregistered trademark, (c) the patent can't be infringed by any of the accused devices whose photos were shown by plaintiffs, and (d) the unfair competition claims are preempted. Yet, even after NeoMagic brought this to the attention of the district court (and the plaintiffs) through two motion filings, Gorge did not alter the injunction request and the district court did not alter the scope of the injunction. Instead, Gorge dismissed NeoMagic under Rule 41 immediately preceding the injunction hearing so that NeoMagic could not present this information verbally to the district court; and the district court refused to allow NeoMagic's counsel to

speak at the preliminary injunction hearing except to state that NeoMagic intended to seek attorneys' fees.

While sanctions are seemingly demanded by this situation, the district court declined to even consider whether the claims were frivolous or whether the conduct of plaintiffs and its attorneys merited any sanctions.

NeoMagic asks this Court to consider the facially baseless/frivolous nature of the claims and the egregious litigation conduct and reverse the district court's order denying attorneys' fees.  And because Gorge did not challenge the reasonableness of the amount of attorneys' fees requested, NeoMagic requests that this Court enter an order directing the district court to make Gorge and its attorneys liable for the full amount of the attorneys' fees requested by NeoMagic.

## Summary of the Argument

NeoMagic argues that each of Gorge's four claims for relief are facially frivolous.  NeoMagic also argues that Gorge engaged in bad faith litigation, vexatious litigation, and litigation misconduct.

Gorge's trademark infringement claim is frivolous because Gorge's own evidence submitted with the complaint demonstrates that NeoMagic did not use any of the three words in Gorge's unregistered common law trademark "Ultimate Ground Anchor."

Gorge's copyright claim is frivolous because Gorge does not hold a copyright registration.

Gorge's unfair competition claim is frivolous because Gorge did not plead facts showing secondary meaning or confusion related to uncopyrighted photos and did not plead any facts showing that NeoMagic's product was anything other than what was depicted.

Gorge's patent infringement claim is facially frivolous because NeoMagic's product only has a single thread wrapped around the shaft, but every claim of the patent requires a plurality of threads.

NeoMagic also argues that the short (3-week) span of this case for NeoMagic was filled with bad faith and vexatious acts of litigation misconduct by Gorge and its attorneys, designed to create a pattern of oppression to force defendants to pay extortionate settlement demands rather than litigate. Gorge started the case by improperly obtaining a sealing order, followed this with an overbroad and oppressive, yet secret, restraining order that permitted Gorge to seize money and websites based on frivolous claims and without serving defendants. Gorge violated multiple safeguards of the Federal Rules of Civil Procedure and made false affidavits to obtain relief. When caught red-handed, Gorge demanded an extortionate settlement amount designed to force defendants to settle rather than litigate. And when NeoMagic refused to pay, Gorge dismissed

NeoMagic hours before the hearing so that NeoMagic's attorney wasn't allowed to speak at the hearing.

# Argument

## Standard of Review

"'[T]he determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a two-step process. First, the district court must determine whether a case is exceptional, a factual determination reviewed for clear error.' The second step is that 'the district court must determine whether attorney fees are appropriate, a determination that we review for an abuse of discretion.' We review the factual determination that the case is exceptional for clear error and the underlying legal conclusions without deference." *Waymark Corp. v. Porta Sys. Corp.*, 334 F.3d 1358, 1362-63 (Fed. Cir. 2003) (internal citations omitted).

"We review the district court's decision to grant or deny attorney fees for abuse of discretion. 'Whether a case is 'exceptional,' in accordance with 35 U.S.C. § 285, is a question of fact.' We review the district court's factual findings for clear error and review whether the district court applied the proper legal standard de novo." *Transonic Sys. v. Non-Invasive Med. Techs. Corp.*, 75 F. App'x 765, 784 (Fed. Cir. 2003) (internal citations omitted).

"[R]eview of the meaning of the term 'prevailing party' is de novo." *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 992 (Fed. Cir. 2020).

"We review the district court's use of its inherent power to impose sanctions under the abuse of discretion standard." *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1308 (Fed. Cir. 2009).

"This court reviews a district court's denial of a motion for sanctions under 28 U.S.C. § 1927 pursuant to the law of the regional circuit." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1141 (Fed. Cir. 2005). The Third Circuit (addressing section 1927 sanctions), stated, "We review a district courts decision to impose sanctions for abuse of discretion." *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*, 103 F.3d 294, 297 (3d Cir. 1996).

## I.    All of Plaintiffs' Claims Against NeoMagic Were Frivolous

Each of Gorge's four claims for relief against NeoMagic were not only frivolous, they were facially frivolous. The district court refused to even consider the baseless nature of the claims or merely made an irrelevant comment that the claims were adequately pled without considering whether any of the claims was actually plausible. This is glaringly obvious where, for example, Gorge pled that NeoMagic infringed an unregistered trademark comprising three generic words, but NeoMagic did not use any of the words or anything that remotely resembled

any of those words.  Yet the district court found no fault with the pleading.  This

Court should reverse the district court and hold that each of Gorge's four causes of

action against NeoMagic was frivolous.

### A.    Gorge's Trademark Claim Against NeoMagic Was Frivolous

Gorge alleged that it held common law rights in the term "Ultimate Ground

Anchor" as a trademark.  Appx028.  Gorge does not hold a registration certificate

on this mark.  This mark is generic and probably couldn't be registered.  *See, e.g.,*

Appx079 (Gorge itself using the term generically, "The Orange Screw® ground

anchor is an innovative screw-in ground anchor … Before we invented the Orange

Screw™, ground anchors consisted of simple tent stakes, …").

Gorge's purported evidence of NeoMagic's alleged use of "Ultimate Ground

Anchor" was provided with the motion for temporary restraining order at

Appx494-497.  Bearing in mind that the mark is allegedly "Ultimate Ground

Anchor", none of the words "ultimate", "ground", or "anchor" appear in the

purported evidence of NeoMagic's trademark infringement.  *Id.*  And nothing that

looks or sounds like any of the words was used by NeoMagic.

The exact words that NeoMagic used were "Plastic Spiral Screw Shape Tent

Nail Hiking Camping Beach Tent Stakes Peg Nail w/ Clear Tube for Outdoor

Travel."  Appx495.

Despite this, Gorge's counsel signed a false declaration against NeoMagic stating, "[W]e identified Defendants as offering for sale and/or selling Counterfeit Products…" Appx213 ¶8 and footnote 4 (identifying "Defendants" and alleged "Infringing Products"). NeoMagic notes that "counterfeit" is a trademark infringement term requiring use of a trademark <u>identical</u> to a <u>registered</u> mark. *See* 15 U.S.C. §§1116(d)(1)(b) and 1127 (defining "counterfeit").

Gorge's counsel further submitted a proposed order (that was entered), stating, "[T]he detailed webpages and photographs were inspected by Plaintiffs' representative who confirmed that each defendant is featuring, displaying, and/or using Plaintiffs' Mark…" Appx094 ¶7. But NeoMagic did not use any of the three words in Gorge's alleged trademark or anything similar. And the mark is unregistered. *See* Appx176 ("… unregistered ULTIMATE GROUND ANCHOR mark…"). Thus, Gorge fails two of three tests needed to prove that NeoMagic is a counterfeiter, i.e., the mark is (1) not registered and (2) not identical or substantially indistinguishable. 15 U.S.C. §1116(d)(1)(B) (defining "counterfeit mark").

In fact, about two-thirds of Gorge's alleged trademark infringement evidence regarding the other thirty-eight defendants[1] actually shows the absence of the use of "Ultimate Ground Anchor." NeoMagic told the district court, "The term

---

[1] Defendants are listed, for example, at Appx055-056.

'ultimate' is missing from the product listings in pages 11-55, 120-138, 144-168, 195-235, 243-292, 312-373, and 390-427."[2]  Appx722, Appx753.  This demonstrates a pattern of abusive litigation by Gorge.  After NeoMagic pointed this out to Gorge twice (e.g., Appx722, Appx801), at a later hearing, the Court asked Gorge's attorneys whether they wanted to make any changes to their application for preliminary injunction.  Plaintiffs' attorneys had no changes. (NeoMagic notes that no hearing transcript was ever made available for this hearing listed as ECF No. 29 (Appx873), but the docket reflects that Gorge didn't change its injunction application to remove the non-infringing defendants). Gorge's attorneys knowingly went forward with false accusations of trademark infringement and at least one false declaration (Appx094 ¶7), and secured a preliminary injunction after notice that at least two-thirds of their evidence, the evidence for approximately 26 of 39 defendants, did not include the purported trademark.

Gorge secretly secured a temporary restraining order against NeoMagic (ECF No. 18), and later secured a preliminary injunction against the remaining defendants (*see* Appx669-684), based upon this false declaration and facially false allegation.

---

[2] These pages correspond to Appx249-292, Appx358-376, Appx382-406, Appx433-473, Appx481-530, Appx550-611, Appx628-665.

NeoMagic presented the frivolous nature of the trademark claim to the district court. Appx752-754, Appx852. The district court ignored this and clearly erred in its consideration, stating,

> NeoMagic can argue (or could have argued if it was not voluntarily dismissed) that the product it was selling and the advertising for that product … did not infringe upon Plaintiffs' trademark, but the fact remains that NeoMagic sold a product that appears to be identical to the Plaintiffs' and used photographs depicting the product that were plausibly claimed to have been identical to those used by Plaintiffs… Neither [Plaintiffs] nor any plaintiff is required to prove their case in the complaint.

Appx006. The district court's analysis does not even consider the presence or absence of the allegedly infringed mark, but focuses on product appearance and photographs unrelated to the purported trademark. *Id.* The district court clearly erred in not finding that the trademark claim was frivolous; NeoMagic did not use even one of the three words in "Ultimate Ground Anchor" or anything that sounds or looks similar.

This Court should reverse the district court's clearly erroneous finding that Gorge's trademark claim against NeoMagic was not frivolous. This Court should also note that approximately 26 of 39 defendants did not use the word "ultimate", hence, could not have used the purported mark; a finding that is relevant to bad faith, litigation misconduct, and vexatious litigation.

## B.     Gorge's Copyright Claim Against NeoMagic Was Frivolous

It is plain to any reader that Gorge alleged copyright infringement against NeoMagic and the other Defendants in the Complaint.   Appx038 ¶19 ("Upon information and belief, Defendants will continue … infringing Plaintiffs' federally registered copyright unless preliminarily and permanently enjoined."). Additionally, Gorge moved for an *ex parte* restraining order and preliminary injunction alleging, "In this case, Defendants' blatant violations of federal trademark and copyright laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets."  Appx189.  Gorge's attorneys also sent NeoMagic email, stating, "[W]e represent Gorge [] in the above matter … alleging that you engaged in … copyright infringement…"  Appx790.  Gorge alleged not once, but thrice, that NeoMagic was a copyright infringer.

However, Gorge must actually own a copyright registration to assert copyright infringement.[3]  But neither Gorge's complaint nor any of its filings identifies or alleges any actual federal copyright registration.[4]

---

[3] *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019) (holding that copyright registration must be issued before complaint can be filed).

[4] *See, e.g., Preston Grp., LLC v. Customers Bank*, No. 5:20-cv-06516, 2021 U.S. Dist. LEXIS 151818, at *18-19 (E.D. Pa. Aug. 12, 2021) ("To survive a motion to dismiss, a copyright infringement claim must allege: … (3) registration of the works in question with the Copyright Office …'") (cleaned up).

NeoMagic informed Gorge and the district court that the copyright allegations were improper.  Appx721 ("…vague allegations regarding copyright…"), Appx728 (citing *Fourth Estate* and noting "…they must have a registration before asserting such rights.").  NeoMagic again pointed this out to Gorge's attorneys in email.  Appx801 ("[Y]ou sued them for non-copyrighted photos…").

Yet, after both the motion and the email, at the injunction hearing (as noted above), the Court asked Gorge's attorneys whether they wanted to change their application for preliminary injunction.  Gorge did not change the allegations and knowingly went forward with false accusations of copyright infringement while on notice that such allegations are improper.

Gorge secured a secret temporary restraining order against NeoMagic (Appx669-684), and later secured a preliminary injunction against all remaining defendants (Appx873 at ECF No. 34), based upon this false allegation of copyright infringement.

NeoMagic presented the frivolous nature of the copyright claim to the district court.  Appx754-755, Appx852-853.  The district court ignored this and clearly erred in its consideration of the frivolous nature of the copyright claim, stating, "Curiously, the Complaint does not assert any claims relating to copyrights."  Appx004.  However, as noted above, Gorge's complaint, motion for

restraining order, and attorney correspondence all allege copyright infringement in plain English; the district court ignored these allegations.

The district court clearly erred in not finding that the copyright claim was frivolous.

This Court should reverse the district court's clearly erroneous finding that Gorge's copyright claim was not frivolous.

### C.    Gorge's Unfair Competition Claim Against NeoMagic Was Frivolous

The district court clearly erred and abused discretion in holding that the unfair competition claim was not frivolous due to an allegation that NeoMagic "used photographs depicting the product that were plausibly claimed to have been identical to those used by Plaintiffs (and actually taken by one of the Plaintiffs)." Appx006.  This is not the standard for determining whether a claim for unfair competition is plausible.  Mere use of an uncopyrighted photograph is not actionable without more.  As NeoMagic informed the district court (Appx725-729, Appx757-759, Appx853), the district court clearly erred and abused discretion in failing to determine that the unfair competition claim was frivolous.

Gorge alleged two counts of unfair competition against NeoMagic. Appx044-045, Appx047.  Gorge's arguments rely on an allegation that NeoMagic uses "Plaintiffs' Works and/or Plaintiffs' Mark" and that this has created likely and actual confusion.  *Id.*

Regarding the use of Plaintiffs' alleged trademark, as shown above, NeoMagic doesn't use any part of "Ultimate Ground Anchor".  If the unfair competition claim is based on trademark infringement, it is facially frivolous.

Thus, district court was asked to consider "Plaintiffs' Works" and whether they form the basis for an unfair competition claim, but made no meaningful consideration.  Gorge defined "Plaintiffs' Works" as Plaintiffs' "photographs, videos, artwork, creative text and product instructions" in exhibits 1 and 2 to the Complaint.  Appx031 ¶7.  Gorge did not allege that it holds any copyright registration to any of these items.  *See generally* Appx027-048.  Gorge's evidence related to NeoMagic (Appx494-497) contains no identifiable videos, artwork, creative text, or product instructions from either of Complaint exhibits 1 or 2.  So, regarding NeoMagic, the allegations regarding Plaintiffs' Works are limited to photographs.  *See* Appx494-497.  As shown below this paragraph, only a handful of these photographs arguably show any product.  The photos showing products are annotated in green, red, and pink below.  The green circles or ovals indicate photos that Gorge claims to own.  Appx058-086.  The red X marks indicate photos or images that Gorge does not claim to own.  The pink squares indicate photos that (a) Gorge claims, and (b) do not show the product:



As can be seen, only one photo that shows more than the head of the screw is claimed by Gorge. This photo (bottom row middle) is reproduced so poorly that one cannot discern that it shows any product. *See* original at Appx495. Gorge apparently bases its confusion argument on this lone photo. But any confusion

argument related to that small photograph is not plausible in view of the large photo above it and multiple photos to the left of it, all depicting NeoMagic's product and all not claimed by Gorge.

Gorge's argument relies on a showing that using Gorge's photographs "to advertise and sell its own less expensive and inferior product" is unfair competition.  However, if NeoMagic shipped what was depicted, then there is no unfair competition. *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 304 (2d Cir. 1981) ("Unlike the dressmaker in L'Aiglon, defendants admittedly shipped exactly what they depicted in their ads.").  To establish likelihood of success, Gorge would have needed to show (or at least pled facts establishing) that NeoMagic's product was inferior.  Gorge did not submit nor plead any evidence regarding the quality or even the appearance of the product attributed to NeoMagic.

Gorge did not plead or establish that NeoMagic shipped anything other than what was depicted.  Thus, there was no likelihood of Gorge's claim succeeding on the alleged facts.

Moreover, the modern case law[5] severely limits such unfair competition claims:

> "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." The rights of

---

[5] Gorge relied on outdated case law from 1954 through 1978.  Appx172-175.

a patentee or copyright holder are part of a "carefully crafted bargain," under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution. Thus, in construing the Lanham Act, we have been "careful to caution against misuse or overextension" of trademark and related protections into areas traditionally occupied by patent or copyright. "The Lanham Act," we have said, "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." Federal trademark law "has no necessary relation to invention or discovery," but rather, by preventing competitors from copying "a source-identifying mark," "reduces the customer's costs of shopping and making purchasing decisions," and "helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product,…"

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-34 (2003) (internal citations omitted).  Thus, if Gorge does not claim copyright rights in the photos, they are "subject to copying." *Id*.  And if Gorge does claim copyright rights, Gorge must have a registration before asserting such rights. *See Fourth Estate*, 139 S. Ct. at 890-892.

Finally, Gorge's state law unfair competition claims are preempted by the copyright act and the Lanham Act, such that there was no likelihood of prevailing on them. *See Fun-Dumental Too, Ltd. v. Universal Music Grp., Inc*., No. 97-1595, 1997 U.S. Dist. LEXIS 9597, *17 (E.D. Pa. July 8, 1997) *citing Waldman Publ'g Corp. v. Landoll, Inc*., 848 F.Supp. 498, 500-501 (S.D.N.Y. 1994) ("Where a plaintiff claims a defendant has copied plaintiffs' product and sold it under

defendant's name, that claim of reverse passing off is preempted by the Copyright Act."). Thus, Plaintiffs had no likelihood of prevailing on that state law claim.

And regarding Lanham Act §43 unfair competition, there can be no unfair competition in using uncopyrighted photographs unless the Gorge shows (or at least pleads facts showing) that the photographs have secondary meaning that associates the photos with Gorge. Gorge made no such pleading or showing. As the Supreme Court stated, "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *Dastar*, 539 U.S. at 33. The Supreme Court specifically cautioned against the type of judicial activism that Gorge sought from the district court: "[I]n construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright." *Id.* Without improper judicial extension of the laws, Gorge's unfair competition claims were made in bad faith.

NeoMagic pointed out in filings on October 2, 2020, that the unfair competition allegations were improper. Appx725-729. Neomagic again showed this to Gorge on October 4, 2020. Appx801 ("[Y]ou sued them for non-copyrighted photos that don't have a secondary meaning.").

Gorge failed to plead or allege even a basic non-frivolous claim for unfair competition against NeoMagic.

The district court clearly erred in not finding that the unfair competition claim was frivolous where there is no suggestion or allegation of any inferior product or any secondary meaning or actual confusion.

This Court should reverse the district court's clearly erroneous finding that Gorge's unfair competition claim against NeoMagic was not frivolous.

### D.    Gorge's Patent Claim Against NeoMagic Was Frivolous

Gorge alleged patent infringement against NeoMagic.  Appx045-046 ¶¶50-55.  NeoMagic notes that it moved to dismiss this minimal pleading for failure to state any facts allowing a plausible inference of infringement.  Appx700-701.  Regardless of sufficiency, the asserted patent has two independent claims and each of the claims includes a limitation requiring "a plurality of threads" on the shaft.  Appx021 claims 1, 5.  The meaning of "plurality" is established in the patent law, i.e., "two or more."  Thus, to infringe, it is facially apparent that an accused product must have two or more threads on the shaft.

An ordinary definition of a "thread" on a screw is a ridge wrapped around a cylinder in the form of a helix.  *See, e.g.*, Appx806 ("[M]ost screws … have a single helical thread wrapped around them…"); Appx815 ("A screw thread is a ridge wrapped around a cylinder or cone in the form of a helix…").

And the accused product of NeoMagic only has a single thread, as demonstrated at Appx495 (image rotated):



As can be seen above, the single thread wraps around the length of the shaft. In contrast, some screws do have a "plurality" of threads, such as the multi-threaded screws pictured below, which are often called "multi-start" screws as opposed to "single-start" screws of the type shown above and in the far left image of each picture below:



The single thread is present in every product accused of infringement by

Gorge. *See, for example,* Appx296, Appx327, Appx401, Appx421, Appx525,

Appx637. Every pictured, accused product has a single thread, not a plurality of

threads. Thus, none of the products can infringe claims requiring "a plurality of

threads."

Demonstrating that Gorge and its attorneys knowingly went forward with frivolous patent infringement claims, NeoMagic's October 2, 2020 brief identified that the patent infringement allegations were facially improper.  Appx724-725. NeoMagic again noted this to Gorge's attorneys on October 4. Appx801 ("[Y]ou sued them for patent infringement when they clearly don't use the patent.").

At the hearing on October 5, the Court asked Gorge's attorneys whether they wanted to make any changes to their application for preliminary injunction.  As noted, no transcript was ever provided, but Gorge and its attorneys knowingly went forward with frivolous accusations of patent infringement against multiple defendants by allowing the preliminary injunction to issue after being on notice of the immediately-apparent noninfringement.

Gorge secured a secret restraining order against NeoMagic (Appx669-684), and later secured a preliminary injunction against all remaining defendants (Appx873 at ECF No. 34), based upon this frivolous allegation of patent infringement.

NeoMagic presented the frivolous nature of the patent infringement claim to the district court.  Appx755-757, Appx853.  The district court ignored this and clearly erred in its consideration of the patent infringement claim, stating,

> NeoMagic can argue (or could have argued if it was not voluntarily
> dismissed) that the product it was selling and the advertising for that

> product did not violate the patent at issue …, but the fact remains that NeoMagic sold a product that appears to be identical to the Plaintiffs' and used photographs depicting the product that were plausibly claimed to have been identical to those used by Plaintiffs… Neither [Plaintiffs] nor any plaintiff is required to prove their case in the complaint.

Appx006.  The district court's analysis does not even consider the presence or absence of the facially absent "plurality of threads" limitation that NeoMagic argued, but focuses on whether Gorge's photos were used or whether the allegedly infringing product looks like Gorge's product.  *Id.*  This is not a design patent case.  The district court clearly erred in not finding that the patent claim was frivolous where it is facially apparent that NeoMagic did not sell a product having the "plurality of threads" limitation.

This Court should reverse the district court's clearly erroneous finding that Gorge's patent infringement claim against NeoMagic was not frivolous.  This Court should also note that none of the identified products of the 39 defendants included "a plurality of threads", hence, could not have infringed the patent; this fact regarding the other defendants is relevant to litigation misconduct and vexatious litigation.

## II.     Gorge and Its Attorneys Engaged In Multiple Acts of Litigation Misconduct and/or Vexatious Litigation

The above showing of frivolous litigation is more than enough to justify sanctions.  The showing of litigation misconduct immediately following this paragraph is also more than enough to justify sanctions, even if the claims were not baseless.

Together, the baseless claims and litigation misconduct should mandate that sanctions be entered against Gorge and its attorneys.  The district court, however, declined to find the conduct of Gorge and its attorneys to be exceptional, stating,

> The Court holds that there is nothing exceptional about this case. In fact, this case has followed the same trajectory of many other cases in this District and in districts throughout the country in instances where a plaintiff discovers that its intellectual property has likely been pirated and identical or substantially similar knock-off products are being offered for sale from on-line platforms. To hold that this case is exceptional would topsy-turvy that term-elevating what is ordinary to extraordinary. It would erect an unwarranted barrier to plausible claims by legitimately injured Plaintiffs.

Appx005.  The district court clearly erred and abused discretion in this finding.

If this case is ordinary, then surely nothing could be extraordinary in a manner that would warrant sanctions.  Rather, every aspect of the short-lived case against NeoMagic was extraordinary.  (The specifics of the misconduct are set forth under individual section headers below this summary.)

Gorge's first filing was a motion to seal the entire case based on false statements about NeoMagic and false statements of the law.  Appx022-026.  After

the court sealed the case (which later unduly thwarted NeoMagic's ability to learn

why its money was seized), the next filing was the Complaint that was rife with the

baseless claims noted above. The complaint and initiating documents also violated

the venue law, the joinder statute, and other provisions of Rule 12. The complaint

was followed immediately by a sealed motion for an *ex parte* restraining order; the

briefing and declarations accompanying that motion contained multiple false

statements (based on false declarations), multiple violations of the safeguards of

the Federal Rules of Civil Procedure. The relief sought in the motion far

overreached what was permissible; yet it was granted without question by the

district court. For example, the motion sought and gained an order allowing Gorge

and its attorneys to abuse the legal process by seizure of extraordinary amounts of

assets before being required to attempt service. And the security provided by

Gorge and its attorneys was far less adequate for the restraining order and

injunction sought; Gorge's bond amounted to less than $130 per defendant, and for

that it was able to seize over $300,000 of NeoMagic's funds and obtain an order

allowing Gorge to take control of NeoMagic's online marketplace; this was based

on a single sale of a $4.99 product that was purchased by Gorge's attorneys and

discontinued before the lawsuit was even filed.

Gorge's sealed, ex parte motion for a restraining order also included a

motion for far overreaching expedited discovery, giving defendants 14 days to

respond to interrogatories, requests for production of documents, and requests for admissions, which was granted. Appx680-681. The motion (and issued order) also included oppressive provisions related to providing ALL accounts, payment methods, and "sales history and listing history." Appx681. (As noted above, NeoMagic's marketplace lists over 100,000 items for sale on a typical day and only a single unit of the $4.99 accused product was ever sold (see, e.g., Appx783 ¶¶4-6), such that these ex parte, sealed discovery orders that demand hundreds of thousands of records were completely out of proportion to the scope of the case.

Gorge also filed (and was granted) a motion authorizing alternative service based on a law that applies only to foreign defendants, even though the front page of the NeoMagic website (the same website that Gorge submitted as "evidence") displays a California address, corporation name, and stock symbol. NeoMagic is a publicly-traded U.S. company, which would have been obvious to anyone and everyone who undertook even a minimal investigation.

The district court granted virtually all of the motions without amendment and without taking a critical look at the allegations.

Almost comical for the irony, if it was not so serious, the district court entered a text order setting a hearing on the pending motions and directing "All parties are to participate…" Appx873 at ECF No. 15. But, as noted, the district court had already sealed the case. So Gorge did not even attempt to serve any of

the defendants.  Rather, Gorge had convinced the district court to enter a <u>sealed</u> order that both (1) stated "Defendants are on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them" and (2) allowed Plaintiffs to delay service of the sealed order and other case documents until "After Plaintiffs' counsel has received confirmation from the Third Party Service Providers …"  Appx679 ¶A and ¶C.  Using this provision, as noted below, Gorge and its attorneys delayed service until the last minute, attempting to foreclose NeoMagic's ability to respond not only to the motion for restraining order, but also to the motion for injunction.

While Fed. R. Civ. P. 65(b) allows a restraining order without notice to the adverse party, that is only permitted where the movant's attorney certifies that it tried to give notice or where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  Here, NeoMagic advertises its California address and stock ticker symbol on the front page of its website, but no one attempted to give notice.  And NeoMagic had ceased sales and removed the product listing for the accused product well before ever learning of the lawsuit; so there was no basis for any affidavit claiming "immediate or irreparable" harm to Gorge.  Rather, Gorge and

its attorneys filed false affidavits so that they could seize NeoMagic's assets and attempt to extract an extortionate settlement.

And that is what happened.  After Gorge and its attorneys seized over $300,000 of NeoMagic's money without notice to NeoMagic, NeoMagic received a notice from PayPal of the seizure.  Appx786.  But though the notice contained the correct court and case number, it indicated an incorrect plaintiff "Ultimate Ground Anchor" and contained an incorrect contact email address.  *Id.*  Even though NeoMagic was given the case number, the case was still sealed.  So NeoMagic could not ascertain anything about why its money was seized.  Appx867 ¶24.  Notably, PayPal stated that it "received a court order on September 22, 2020…" from Gorge.  Appx786.

Yet Gorge and its attorneys waited a full week to contact NeoMagic and provide notice of why NeoMagic's funds in excess of $300,000 had been seized. On September 29, 2020, Gorge finally sent an email providing a website where limited case documents could be downloaded, as the case remained sealed. Appx790.

NeoMagic was able to retain counsel within two days (Thursday, October 1, 2020).  And NeoMagic's counsel then worked all night to file a motion to dismiss and a motion responsive to the district court's order to show cause before the court closed on Friday.  These motions were submitted by email through an emergency

appearance that the district court allowed.  *See, e.g.,* Appx692, Appx716 (both

noting "emergency appearance").  The court entered the filings on the record.

After the motion to dismiss was submitted to the district court and Gorge's

counsel on Friday, October 1, 2020, Gorge's counsel telephoned and asked for a

settlement offer, to which NeoMagic's counsel responded that the case was

baseless and Gorge should dismiss with prejudice and offer to pay all of

NeoMagic's attorneys' fees.  *See* Appx795 ¶16.  Gorge's counsel called later and

proposed that NeoMagic should pay $9,500 to have its funds released (bear in

mind that NeoMagic sold one unit of a $4.99 product to the same lawyers, the sole

accused product/sale of NeoMagic in this lawsuit).

After receiving this extortionate offer, NeoMagic filed its second motion, an

omnibus motion to dissolve the restraining order, deny the preliminary injunction,

dissolve the service order, unseal the case, increase the bond, and prevent

plaintiffs' and their attorneys from filing similar actions in the future.  *See, e.g.,*

Appx709-738.

After this motion was filed and Gorge and its attorneys realized that their

extortionate demand of $9,500 would not be met (*see, e.g.,* Appx801 (email

refusing to pay)), they sent a notice of voluntary dismissal under Fed. R. Civ. P.

41(a)(1)(A)(i) on Sunday evening (October 4, 2021) (*see* Appx867 ¶25), mere

hours before the scheduled preliminary injunction hearing on Monday morning

(October 5, 2021). *See* Appx873 at ECF No. 22 (text entry of scheduling order). The notice of voluntary dismissal was entered on the docket by the district court on October 6, 2020. Appx739-740. Because it was submitted before the October 5 hearing, NeoMagic's counsel was barred from speaking at the hearing, except to state on the record that NeoMagic intended to seek attorneys' fees following the dismissal.

While the entire span of the lawsuit against NeoMagic lasted approximately 3 weeks, from the first filing on September 15, 2020 to the dismissal that Gorge sent the district court on October 4, 2020, every aspect of Gorge's case was litigated in bad faith, with the intent to make opposition as burdensome as possible, and with the intent to remove as many of the protections of due process as the district court would allow. As was revealed through the extortionate settlement offer, this was done with the intent to force NeoMagic to pay a ransom to have improperly seized money released, even after understanding that the claims against NeoMagic were made in bad faith and based on false affidavits.

This is the very definition of vexatious litigation and litigation misconduct. It does not matter that the lawsuit lasted only three weeks; the plaintiffs took every effort and every step in bad faith and confirmed as much by demanding payment of almost $10,000 to release improperly seized money, after being directly confronted

with a showing that the lawsuit was in bad faith.  Condoning the conduct of Gorge and its attorneys will put a stain on the federal courts.

The district court should be reversed and Gorge (along with its attorneys) should be ordered to pay NeoMagic's reasonable attorneys' fees.

### A.     Improper Motion to Seal the Case

Gorge's litigation misconduct started from the first filing in this case, when it asked that the case be sealed against NeoMagic, a company with publicly-traded stock and a California main office.  Appx022-026.  Gorge headlined this request with a statement that the defendants were "promoting, advertising, distributing, offering for sale, and selling knock-off versions of Plaintiffs' ULTIMATE GROUND ANCHOR$^{TM}$ (the 'Infringing Product') which closely mimic the appearance of Plaintiffs' genuine product throughout the United States …" Appx022.  This highlights the problems with indiscriminate joinder.  While NeoMagic does not know what the other defendants did, the headline statement demonstrates both the baseless nature of the claims and Gorge's reliance on statements unrelated to NeoMagic.  First, NeoMagic had sold only a single unit of the accused product; that product was not sold, promoted, distributed, or advertised "throughout the United States."  Rather, Gorge's attorneys bought the only unit

that was ever sold.  Appx783-784 ¶¶5, 6; Appx497.[6]  Second, NeoMagic hadn't

used any one or any combination of the words "ultimate", "ground" and "anchor"

in the product listing for this product.  Appx495-497.  Third, the complaint did not

assert any trade dress or design patent, so the reference to products that "closely

mimic the appearance" (Appx022) was irrelevant to any issue in the case; absent

some right to protect a product's appearance, anyone can mimic the appearance.

*See Dastar*, 539 U.S. at 33 ("In general, unless an intellectual property right such

as a patent or copyright protects an item, it will be subject to copying.").

Gorge purported to show "good cause" to seal the case, but then merely

stated that "A variety of Courts have granted the relief requested herein" without

making specific allegations about this case.  Appx023.  Sealing of other cases

based on the facts of those cases does not demonstrate good cause to seal this case,

yet that is all that Gorge provided.  Appx023.

Gorge concluded with a misleading statement that the Lanham Act provides

for sealing "in cases involving counterfeiting."  Appx024.  However, the code

section cited by Gorge (i.e., 15 U.S.C. §1116(d)) is limited to a "counterfeit mark"

specifically defines "counterfeit mark" as "a counterfeit of a mark that is registered

---

[6] *Compare* address in cited appendix pages to counsel's address at Appx869.
While the order was sent to "Sewickley, PA" and counsel lists the address as
"Pittsburgh, PA", both have the same street address "409 Broad Street" and the
same zip code "15143".  It is the same address, stylized differently.

on the principal register" and "identical with, or substantially indistinguishable

from" the registered mark.  15 U.S.C. §1116(d)(1)(B).  But, as discussed above in

the trademark section, Gorge knew both that its mark was <u>not</u> registered and that

NeoMagic did not use any portion of the mark, let alone an identical mark.

From its first act in this case, Gorge misled the Court into improperly sealing

the case against NeoMagic.  This had the effect of almost completely thwarting

NeoMagic's attempts to learn why its money was seized from PayPal, because

Gorge did not provide any notice to NeoMagic until a week after the money was

seized.  *See* Appx786 (email from PayPal saying money was seized on Sept. 22,

2020), Appx790 (email from Gorge on Sept. 29, 2020, only three business days

before injunction hearing).

## B.    Gorge Did Not Show Any Irreparable Harm When Obtaining An Abusive Restraining Order

After sealing the case, Gorge immediately filed its complaint (Appx027) and

motion for a temporary restraining order and preliminary injunction.  *See, e.g.,*

Appx090 (motion), Appx120 (memorandum).

While NeoMagic noted to the district court that Gorge failed to make any

allegation or showing of irreparable harm from NeoMagic in the 60-page brief, the

district court ignored this misconduct in denying sanctions.  *See* Appx759

(NeoMagic argument), Appx001 (referring to irreparable harm).  The district court

clearly erred and abused discretion when it held that "there is nothing exceptional about this case, as asserted against NeoMagic."  Appx005.

However, seeking and obtaining a restraining order or an injunction based on "irreparable harm" when there is no ongoing harm is completely exceptional. Both Rule 65(b) and the case law specifically require a clear showing of "irreparable harm" to obtain a restraining order.  Fed. R. Civ. P. 65(b)(1)(A) (allowing restraining order "only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result…"); *see, e.g., Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) ("Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.") (internal citation omitted).

As NeoMagic notified the district court in its motion for attorneys' fees, Gorge did not set forth any facts showing or supporting a finding of irreparable harm with respect to NeoMagic.  Appx759.  The patent, trademark, copyright, and unfair competition claims were without merit.  *Id.*  The trademark was not used. The copyright is non-existent.  And the unfair competition claims require

secondary meaning that is not present and was not alleged.  With respect to the

patent claims, they are not relevant to the accused product.

Even if one or all of these claims were not baseless, only a single unit of the

accused product was sold.  Appx783-784 ¶¶5-6.  And the only sale of that item was

shipped to Plaintiffs' attorneys.  *Id.* ¶6.  The item was not even listed on

NeoMagic's website at the time of the lawsuit.  *Id.* ¶5.

Even if this item infringed, past sales of infringing items can be

compensated by damages under 35 U.S.C. §284 or other appropriate damages

statutes.  But a single past sale of a $4.99 item does not constitute irreparable harm

necessitating injunctive relief.  Rather, as Rule 65 clarifies, the party seeking a

restraining order or injunction must provide "specific facts" that "clearly show that

immediate and irreparable injury, loss, or damage will result."  Fed. R. Civ. P.

65(b)(1)(B).  This was impossible here, where the product was no longer listed for

sale or sold by NeoMagic at the time of the Complaint.  Appx783 ¶6.  Even if the

product had been listed when the Complaint was filed, Gorge made no showing to

establish that monetary damages would be an insufficient remedy for any

purported infringement.

This Court should find that the district court clearly erred and abused

discretion when it failed to recognize Gorge's motion for a restraining order and

resulting seizure of over $300,000 from NeoMagic as vexatious litigation or litigation misconduct.

Moreover, despite the lack of showing of any irreparable harm attributable to NeoMagic, Gorge was able to induce the district court to enter a far-overreaching restraining order that allowed Gorge the ability to seize all of NeoMagic's financial accounts, seize NeoMagic's website with 100,000 product listings, and force a shutdown of NeoMagic's website, all based on a past sale of a single unit of a $4.99 product.  The gross overreach was proposed and obtained solely based on the false representations by Gorge, and represents bad faith and vexatious litigation tactics.

### C.    Overreaching and Oppressive Discovery

As yet another example of the vexatious litigation or litigation misconduct engaged in by Gorge, Gorge secured, as part of its sealed relief, an order authorizing extensive expedited discovery, to be answered in 14 days.  The order permitted interrogatories, requests for production of documents, and requests for admissions.  Appx680-681.  (While the discovery requests are not of record in the district court proceedings, Gorge served – via publication on its attorneys' website – six interrogatories (one of which has at least nine subparts), seventeen requests for production, and forty requests for admission.  NeoMagic can provide a copy of

these requests if they will be useful to this Court.)  While expedited discovery is an

unusual mechanism, far more unusual is the limited 14-day response time and

service by publication on a website.  Combined with the baseless claims and sealed

case files, these discovery requests were propounded to make the prospect of

responding to the request for preliminary injunction more oppressive and the

prospect of paying an extortionate settlement more appealing.

In addition to these discovery requests, Gorge also secured an order from the

district court directing all defendants and multiple third parties to "provide to

Plaintiffs' counsel all documents and records in their possession, custody or

control (whether located in the U.S. or abroad) relating to Defendants' User

Accounts and Defendants' Merchant Storefronts."  Appx681.  As noted above, one

of NeoMagic's primary businesses is an online marketplace where users can list

and sell products.  Appx783.  On a typical day, over 100,000 items are listed for

sale on NeoMagic's online marketplace.  *Id.* ¶4.  Gorge's lawsuit related to only a

single product of which only a single unit was sold for $4.99, and the purchaser

was Gorge's attorneys.  *Id.* ¶¶5-6.

In view of this extremely limited accusation against NeoMagic, it was

extraordinary, vexatious, and litigation misconduct to secure a court order directing

NeoMagic to provide, within 14 days, "all documents and records … relating to

Defendants' User Accounts and Defendants' Merchant Storefronts" (Appx681 ¶B)

where 100,000 products are typically on sale from many different sellers. Appx783 ¶4.  If only one document was produced for each of a single day's product listings, this would amount to over 100,000 documents.  This breadth of discovery would not be permitted by the "proportional[ity]" requirement of Rule 26, even if the discovery was not sealed and normally served with a normal 30 day response period.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery … that is relevant to any party's claim or defense and proportional to the needs of the case, considering … the amount in controversy … and whether the burden or expense outweighs its likely benefit.").  Here, where the order was sealed, not served, and required production of essentially every document related to NeoMagic's online marketplace within 14 days, it was merely an attempt to cow NeoMagic into an extortionate settlement.

The district court clearly erred and abused discretion in ruling that "there is nothing exceptional about this case, as asserted against NeoMagic" (Appx005) and that there was no "abusive conduct" that would warrant sanctions under 28 U.S.C. §1927.  Appx006.  It is plain to any observer that securing a secret court order requiring oppressive, expedited discovery and a further order requiring a defendant to produce "all documents and records" in view of a single sale for $4.99, is vexatious and is misconduct.

This Court should reverse the district court's finding.

### D.    Gorge Secured An Overreaching TRO on an Insufficient Bond

Having failed to allege any legitimate intellectual property rights, Gorge

moved the Court for an overreaching temporary restraining order ("TRO") and

preliminary injunction ("PI") in an ex parte and sealed filing.  Gorge proposed and

obtained a temporary restraining order with the following overbroad seizure

provisions that are unrelated to the alleged harm suffered based on Neomagic's

alleged actions.  For example, on a typical day, Neomagic's website lists over

100,000 items for sale.  Appx783 ¶4.  This lawsuit is related to a single item,

approximately 1/1000 of one percent of the items on the website.  At the time that

the TRO issued, Neomagic's Paypal account that was frozen had a balance of over

$300,000.  Appx784.  The total sales of products accused of infringement

amounted to $4.99.  Appx783 ¶6.

Based on this single sale of less than $5, the TRO and proposed PI broadly

prohibits (a) defendants from transferring "any money, securities or other property

or assets…"  (Appx673 ¶(2));  (b) assignments, transfers, importing, exporting,

advertising, marketing, distribution, etc. (Appx675 ¶(3)); (c) use of uncopyrighted

"Plaintiffs' Works."  (*Id.* ¶(4)); and imposes many other broad restraints.

Appx675-676 ¶¶(6)-(9).

And the order set mandatory dates (Appx679), but allowed Plaintiffs to

delay service of the order indefinitely, until "Plaintiffs' counsel has received

confirmation" of seizures.  *Id*. ¶C.  This procedure would permit Gorge to obtain a PI without ever serving defendants.

Further, the TRO contains many proposed and entered "factual" findings that directly contradict the actual facts set forth in this brief.  See, e.g., Appx670-673 ¶¶1, 3, 6, 7, 8, 9, 10, 11, 13.

Gorge seized the $300,000 from NeoMagic based on a total bond in the amount of $5,000.  Appx682.  This is $128.21 for each of 39 defendants (i.e., $5000/39 = $128.21).  Thus, Gorge seized $300,000 and could have seized and inactivated NeoMagic's website with 100,000 products, based on posting $128.21.  This bond was facially inadequate.

## E.    Gorge Improperly Delayed Service

Gorge obtained the temporary restraining order ("TRO") on September 21, 2020.  Appx669.  Gorge seized $300,000 from NeoMagic on September 22, 2020.  Appx784, Appx786.  Yet Gorge delayed serving NeoMagic until September 29, 2020 (Appx790), only three days before submission deadlines under the order to show cause ("OSC") on October 2, and only four business days before the hearing.  Appx679.

It is stunning that Gorge requested, and even more stunning that the district court granted, an order allowing broad seizures of property followed by indefinite delay in service.  And it was misconduct for Gorge to delay so long in serving the

case documents after seizing NeoMagic's financial account.  Moreover, this delay

unnecessarily multiplied proceedings in a vexatious manner because NeoMagic

was forced to retain counsel around-the-clock to respond to the OSC, rather than

having an opportunity to speak reasonably with Gorge.

### F.    Gorge's Extortive Settlement Tactics

The district court further erred and abused discretion when it failed to

recognize that Gorge's extortive settlement tactics were vexatious or litigation

misconduct.  NeoMagic pointed the district court to these tactics.  Appx761-762.

Yet the district court ignored the tactics in its order denying fees.  Appx001-012.

After NeoMagic was notified of the sealed lawsuit by Plaintiffs' September

29, 2020[7] email (Appx784 ¶8), NeoMagic rushed to retain counsel and was able to

retain counsel on October 1, the day before the Court's deadline for filing papers

opposing a preliminary injunction and less than two full business days before the

injunction hearing.  Appx679 ¶B (setting October 2, 2020 as deadline for opposing

papers); Appx784 ¶9 (counsel retained Oct. 1).

On October 2, responsive to the district court's order to show cause

(Appx679), NeoMagic filed a motion to dismiss under Rule 12 by email at 1:08 pm

---

[7] As noted above, PayPal notified NeoMagic on September 23 that it had frozen
NeoMagic's account, but the case number was sealed, the notice indicated an
incorrect plaintiff, and the email for contacting Gorge's counsel was incorrect.
Appx786.  So the September 29 notice was the first notice that provided relevant
information about the sealed lawsuit.

Eastern time to the district judge's chambers and plaintiffs' counsel. Appx795 ¶16. Shortly after that filing, Gorge's counsel telephoned and asked for a settlement offer. *Id*. NeoMagic responded that the case was baseless, explained why, and stated that plaintiffs' should dismiss with prejudice and offer to pay all of NeoMagic's attorneys' fees. *Id*. The call ended. Shortly after that, NeoMagic received a second call from Gorge's attorney in which Gorge proposed that NeoMagic should be willing to pay some amount to have its financial account released, and that plaintiffs' proposed a payment of $9,500. *Id*. (The reader should bear in mind that this nearly $10,000 settlement offer came after Gorge was told that NeoMagic had sold a single unit of the accused product for $4.99. This nearly $10,000 demand represents an extortionate harassment cost to release the improperly seized monies totaling over $300,000 (Appx784 ¶7), not an approximation of damages for alleged infringement.) NeoMagic's attorney responded that he would take the settlement offer to NeoMagic as required, but that he would advise NeoMagic not to pay anything to plaintiffs. *Id*. Gorge's attorney acknowledged this call by email. Appx802 (see header information on Appx801).

Later on October 2 (at 6:45 pm Pacific / 9:45 pm Eastern), NeoMagic filed its Omnibus Motion (Appx709-738). The motion asked the district court to dissolve the restraining order, deny the preliminary injunction, dissolve the service

order, unseal the case, increase the bond, and prevent Gorge and Gorge's attorneys from filing similarly abusive cases in the future. *Id.* The motion was filed by emailing the motion to the district judge and Gorge's counsel. (The lawsuit was still sealed and counsel had been retained the preceding afternoon (Appx784 ¶9), so NeoMagic did not have access to the docket or ECF filing.)

On October 3, NeoMagic received a phone call and email from Gorge seeking a settlement counter-offer. *See, e.g.,* Appx801-802. NeoMagic's counsel responded shortly after midnight (i.e., 12:37am on October 4), informing plaintiffs' counsel that the case was "frivolous" and sanctionable, giving a brief explanation of the reasoning, and stating that the declarations submitted by plaintiffs' counsel were false. *Id.* NeoMagic's counsel also informed Gorge that Gorge should dismiss the case with prejudice and pay all of NeoMagic's attorneys fees for the matter. *Id.*

After Gorge and its attorneys realized that their extortionate demand of $9,500 would not be met, on October 4, Gorge served a notice of dismissal under Rule 41. In that document, Gorge falsely stated that "each party [was] to bear its own attorneys' fees, costs, and expenses." Mr. Oliver appeared for NeoMagic at the hearing on October 5, to clarify the record that NeoMagic did not agree to bear its own fees, costs, or expenses. *See, e.g.,* Appx883 (minute entry clarifying, "there is no agreement that each party shall pay their own fees and costs."). Thus,

the notice of voluntary dismissal that appears on the docket does not contain any statement that each party shall bear their own fees and costs.  Appx739-740.

The district court erred and abused discretion in failing to consider this extortionate settlement demand of $9,500 related to the accused sale of a single unit for $4.99.  This demand was premised on Gorge's seizure of over $300,000 from NeoMagic, not the value of any expected damages.  It was oppressive, vexatious, and litigation misconduct designed to force a party to settle rather than to allow the district court to consider the merits.

### G.     Gorge Knowingly Filed in an Improper Venue

Though NeoMagic informed the district court (e.g., Appx762), the district court ignored misconduct related to Gorge's knowingly filing the lawsuit in an improper venue.  This was also abuse of discretion or clear error.

Based on the following facts and the requirements of the venue statutes (e.g., 28 U.S.C. §§1391 and 1400), Gorge knew (or with a minimal pre-filing investigation would have known) that venue for patent infringement was only appropriate in California or Delaware, not Pennsylvania.[8]

---

[8] In the event that Gorge raises pendent jurisdiction, it is worth noting *ARP Wave, Ltd. Liab. Co. v. Salpeter*, 364 F. Supp. 3d 990, 997 (D. Minn. 2019) ("Every court that has addressed the issue following *TC Heartland* … has found that there is no 'pendent' venue over a patent-infringement claim unless there is 'original' venue over a separate patent-infringement claim under § 1400(b).").

Gorge listed NeoMagic's website at www.mercadomagico.com in Schedule A to the Complaint. Appx056 at line 25. Gorge provided a partial screenshot of the same website (partially loaded without text), showing that Gorge accessed the main webpage at www.mercadomagico.com on May 4, 2020. Appx496 (note date at upper left and web address at lower left). NeoMagic operates the website at http://www.mercadomagico.com. Appx783 ¶3. NeoMagic has operated this website for several years. *Id*. The front page of this website states "Launched as a division of NeoMagic Corp, MercadoMagico.com is an exciting and growing web destination for purchasing and selling products." *Id*. The front page of this website further states, "MercadoMagico is a division of NeoMagic Corporation (Stock Symbol:NMGC)." *Id*. The front page of this website further states, "Contact Us  830 Hillview Ct #138 Milpitas, CA-95035 United States  (844) 854-6823." *Id*. Each of these statements had been on the front page of this website for more than a year before the lawsuit was filed. *Id*. Further, as noted to the district court in NeoMagic's Motion to Dismiss, NeoMagic is a Delaware corporation with its corporate office in California. Appx694-695. NeoMagic does not maintain a regular or established place of business in Pennsylvania. *Id*.

Both the corporation's name and the contact information were prominently displayed on the website when Gorge's attorneys accessed the website and placed an order on May 4, 2020. *Compare* Appx496 (May 2020) to Appx783 ¶3

(declaring that features of website were in place at least since October 2019). Despite this, Gorge submitted a false attorney affidavit that, "[T]he Defendants selling on online marketplaces do not display their registered business name or trade name, contact name, complete address or any other contact information. These Defendants use their respective Merchant Storefronts and User accounts to anonymously sell…" Appx111 ¶12. Gorge further submitted a false attorney affidavit, stating, "…Plaintiffs have not been able to determine Defendants' exact location due to their concealed addresses." Appx881 ¶9. Gorge further submitted a motion requesting and obtaining permission to perform service under a procedure authorized only for foreign defendants, despite NeoMagic's open and unmistakable domestic nature. Appx872 at ECF No. 10 (Motion for an Order Authorizing Alternative Service [Under Rule 4(f)(3)]). This motion was granted. Appx668. Gorge further submitted a motion referring to "the covert nature of Defendants, their business operations and the fact that they appear to be foreign individuals or companies…" Appx193 (Memorandum in Support of Ex Parte Application for TRO).

Gorge made multiple false statements about NeoMagic being a foreign entity when its corporate status, publicly traded stock, and California address were all plainly displayed on webpages that Gorge accessed. And the identified plaintiffs are from the state of Washington. Appx036. Under either venue statute,

venue as to NeoMagic was only proper in California or Delaware, not
Pennsylvania.  The only tie to Pennsylvania is that Gorge's attorneys are from
Pennsylvania.

The improper venue is yet another fact that the district court should have
considered as part of the litigation misconduct of Gorge and its attorneys.

**H.    Gorge Further Made Baseless Statements in an Attempt to
Manufacture Jurisdiction and Failed to Comply With Rule 12 in Other
Ways**

It was error or abuse of discretion for the district court to ignore Gorge's
attempt to manufacture jurisdiction and otherwise fail to comply with Rule 12.
NeoMagic pointed the district court to these issues (Appx763-764), but the district
court seemingly ignored them.

The district court ignored that Gorge alleged without support that NeoMagic
directed activities at Pennsylvania.  Appx033.  That allegation was an unsupported
attempt to manufacture personal jurisdiction.  Gorge pointed only to a single
Pennsylvania purchase, a purchase made by Gorge's attorneys and directed to
Gorge's attorneys' address.  Appx497.

In addition to this, NeoMagic noted to the district court that the summons in
this case was incomplete and without sufficient information to constitute proper

process. *See, e.g.,* Appx698-699 (noting that summons was missing names and addresses of all but one defendant).

Further, NeoMagic noted to the district court (Appx699) that Gorge attempted to serve process under Fed. R. Civ. P. 4(f)(3) (*see* Appx668). But this provision is applicable only to foreign defendants. As noted above, NeoMagic prominently displays its California address on the website that Gorge submitted to the district court as evidence.

Finally, NeoMagic noted to the district court that in an attempt to manufacture a basis to obtain *ex parte* orders, Gorge alleged that "Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms…" Appx038 ¶18. Gorge further alleged that "Defendants are currently targeting their infringing activities toward consumers…As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit." Appx038 ¶19. But there is no evidence or factual pleading supporting the fraud allegation.

Each of these issues may, alone, be insufficient to merit sanctions. But they should be considered along with the whole of Gorge's conduct and that of its attorneys.

## I.     Gorge Improperly Joined NeoMagic With Almost 40 Defendants

The district court further erred or abused discretion by failing to consider the improper joinder of almost 40 defendants in a patent infringement lawsuit. NeoMagic pointed the district court to this improper joinder.  Appx764.  But the district court ignored it in the analysis of Gorge's litigation misconduct.

To support the improper joinder, Gorge alleged, without factual support, that NeoMagic is involved in some vaguely identified "conspiracy."  Appx031 ¶8. This appears to be based on unsupported allegations that the various defendants were working together to manufacture and distribute products and that "the Infringing Products share similar characteristics including … colors, shapes, and sizes."  *Id*.  However, Gorge's purported evidence of various defendants does not support this and, actually, shows that these products were likely manufactured by different companies:



Image from Appx705 (citing Appx251, Appx318, Appx330, Appx342, Appx344, Appx439). Even casual observation shows that these products are shaped differently and most likely manufactured by different manufacturers.

Gorge's allegations were insufficient for joinder under 35 U.S.C. §299. They merely served to overburden the Court and avoid payment of filing fees for 39 defendants. *See, e.g., Richmond v. Lumisol Elec. Ltd.*, No. 13-1944 (MLC), 2014 U.S. Dist. LEXIS 90541, at *18-19 (D.N.J. July 3, 2014) (plaintiff "has placed an undue burden on the judiciary and the Clerk of the Court by seeking relief under only twelve docket numbers and paying only twelve filing fees" for 80 defendants); *Reese v. Spring Nextel Corp.*, No. 2:13-cv-3811-ODW(PLAx), 2013 U.S. Dist. LEXIS 98635, at *4 (C.D. Cal. July 15, 2013) ("…even if the underlying infringing parts or service are identically sourced, there are other factors to consider before joining the defendants…").

The district court ignored the improper joinder in its analysis.

Summing all (or even just a subset) of these acts, it is apparent that Gorge engaged in bad faith litigation conduct, vexatious litigation conduct, and litigation misconduct all designed to force defendants into a position requiring an extortionate settlement rather than the ability to address Gorge's frivolous claims on the merits. This should be sanctioned.

## III. The District Court Abused Discretion and Erred in Finding That Gorge's Conduct Should Not Be Sanctioned

Where a party proceeds with even one facially frivolous claim, the conduct is sanctionable. Here, Gorge filed four frivolous claims (trademark, copyright, unfair competition, and patent). Where a party engages in litigation misconduct or vexatious litigation, the conduct is sanctionable. Where the conduct is formed in bad faith (as demonstrated by the numerous false declarations here), the conduct is sanctionable.

NeoMagic presented the district court with multiple statutory and non-statutory regimes under which Gorge could be sanctioned, because it is not entirely clear whether some or all of them apply. But the one thing that is clear is that Gorge's frivolous claims and misconduct cannot be permitted without leaving a

stain on the court system, a system that is designed to promote justice, not abusive litigation.

Here, the district court completely abandoned its gate-keeping role in both the consideration of the orders requested by Gorge and consideration of whether Gorge's conduct in seeking those orders was sanctionable. Instead, the district court ruled that these frivolous claims and vexatious conduct are normal: "The Court holds that there is nothing exceptional about this case. In fact, this case has followed the same trajectory of many other cases in this District and in districts throughout the country … To hold that this case is exceptional would topsy-turvy that term – elevating what is ordinary to extraordinary." Appx005. This statement itself is exceptional, as it should be unfathomable that a plaintiff can bring frivolous claims and use them to engage in the type of misconduct found here.

NeoMagic calls on this Court to right the ship and set it back on its proper course. Because if this case is ordinary, justice is not being done.

NeoMagic does not know the best sanction regime for this conduct but suggests the following regimes that fit this case. These were identified to the district court and rejected by the district court.

### A.    The Court's Inherent Power

If none of the other sanctions regimes below applies directly, under the Court's inherent power, attorneys' fees can be assessed for bad faith, vexatious, wanton, or oppressive acts.  As noted above, each of these types of acts are present. The Court should reverse the district court and enter sanctions under its inherent power.

District courts have the inherent power to assess attorneys' fees against parties and counsel.  *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991) ("an assessment of attorney's fees is undoubtedly within a court's inherent power…"); *see also Ford v. Temple Hospital*, 790 F.2d 342, 346 (3rd Cir. 1986) ("The power of the court to assess attorneys' fees … cover[s] both litigants and their counsel."). Furthermore, a "court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*. at 45-46; *see also Hall v. Cole*, 412 U.S. 1, 5 (1973) (permitting fees for actions "in bad faith, vexatiously, wantonly, or for oppressive reasons").

This Court "appl[ies] the law of the regional circuit…" on this issue.  *Walker v. Health Intern. Corp.*, 845 F.3d 1148, 1153 (Fed. Cir. 2017).  The Third Circuit notes that fees may be assessed "when [the] opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Ford*, 790 F.2d at 346.

The district court clearly erred and abused discretion when it held: "[The Court] does not find that Plaintiffs engaged in bad faith, vexatious or wanton conduct." Appx012.  Rather, as demonstrated above, Gorge's claims were brought in bad faith, Gorge made bad faith statements to secure onerous orders from the district court, Gorge's entire course of litigation conduct was vexatious and wanton.  As the district court noted, the Third Circuit permits use of the court's inherent power in "those cases in which the conduct of a party or an attorney is egregious and no other basis for sanction [sic] exist."  Appx011 (quoting *In re Prudential Ins. Co. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002).

If this Court does not fully sanction Gorge under the authorities discussed below, it should reverse the district court and exercise the inherent power to sanction Gorge and its attorneys.

## A.   28 U.S.C. §1927

The district court erred and abused discretion in denying sanctions under section 1927 based on a holding that Gorge "did nothing to vexatiously delay or prolong the litigation." Appx007.  Section 1927 and the relevant case law do not require "delay" or "prolonging" litigation, although if present, such factors might further support a sanction under section 1927.

Rather, under §1927, attorneys fees can be assessed for (a) multiplying proceedings, (b) unreasonably and vexatiously, (c) increasing the cost, and (d) doing so in bad faith or by intentional misconduct.  As noted above, at least factors a, b, and d are present here.  Gorge's attorneys could have filed a single defendant lawsuit against NeoMagic in an ordinary manner.  The parties might have been able to discuss the lawsuit and come to a conclusion that NeoMagic did not use the trademark, copyright, or patent and did not engage in unfair competition; this might have all occurred before the 90 days that Fed. R. Civ. P. 4(m) provides for service of the complaint.  And without the unwarranted seizure of over $300,000 from NeoMagic (based on a single unit sale of a $4.99 item), NeoMagic might not have been put in a position wherein it needed to rush to recover its ability to do business.

Instead of taking this course of action, Gorge's attorneys moved to seal the case, moved for restraining order and injunction, moved for expedited and onerous discovery, moved for alternative service, and seized over $300,000 of NeoMagic's money.  This extensive motion practice was based on frivolous claims and many falsified statements about NeoMagic, as demonstrated above.  None of the multiplication of proceedings was merited.  All of the multiplication of proceedings was unreasonable and vexatious.  All of the multiplication of proceedings increased the cost.  And all of the multiplication of proceedings was

done in bad faith and through intentional misconduct (for example, based on bad faith claims and based on false sworn statements in attorney affidavits).

Section 1927 of Title 28 U.S.C. provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927. "[Section] 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

While the entire span of the lawsuit against NeoMagic lasted approximately 3 weeks, from the first filing on September 15, 2020 to the dismissal that Gorge sent the district court on October 4, 2020, every aspect of Gorge's case was litigated in bad faith, with the intent to make opposition as burdensome as possible, and with the intent to remove as many of the protections of due process as the district court would allow. As was revealed through the extortionate settlement offer, this was done with the intent to force NeoMagic to pay a ransom to have

improperly seized money released, even after understanding that the claims against NeoMagic were made in bad faith and based on false affidavits.

Regardless of the length of the case, this lawsuit directly implicates 28 U.S.C. §1927. This Court should reverse the district court and hold that Gorge's attorneys are responsible to pay NeoMagic's reasonable attorneys' fees.

### B.    42 Pa. C.S.A. §2503

Under Pennsylvania section 2503, attorneys' fees can be assessed for arbitrary, vexatious, or bad faith conduct. As noted above, each of these types of acts are present. This Court should enter sanctions under section 2503.

The district court stated that "it will assume, without deciding, that Pennsylvania law should apply" to Gorge's "two supplemental common law claims." Appx008. But the district court erred and abused discretion in finding that Gorge's common law claims were not "brought arbitrarily, vexatiously, or in bad faith." *Id.*

The relevant code section, 42 Pa. C.S.A §2503 (9), provides in pertinent part:

> The following participants shall be entitled to a reasonable fee as part of the taxable costs of the matter: …
> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

The Pennsylvania Supreme Court has set forth the following tests:

> An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption.

*Thunberg v. Strause*, 545 Pa. 607, 615, 682 A.2d 295, 299 (Pa. 1996) (internal

citations omitted).

As noted above, under the Pennsylvania Supreme Court construction, the suit is at least vexatious, because Gorge lacked sufficient grounds in law or in fact and the suit caused the sole purpose of causing annoyance. The suit is also in bad faith because it was filed for purposes of obtaining onerous and vexatious orders that would allow Gorge to demand extortionate settlements even after it was aware that its claims were baseless, then dismiss any defendants who challenged the assertions so that Gorge could proceed to an injunction against the remaining defendants.

This Court should reverse the district court and determine that this case merits sanctions under 42 Pa. C.S.A §2503.

### C.   35 U.S.C. §285; 15 U.S.C. §1117; 17 U.S.C. §505

Each of sections 285, 1117, and 505 provide statutorily for attorneys fees in exceptional cases for patent, trademark, and copyright infringement respectively. As noted in the above discussion of the nature of the claims and Gorge's litigation

conduct, this case is exceptional with respect to each of its claims of patent, copyright, and trademark infringement.  The prefiling investigation was flawed.  False and baseless assertions were made.  And the case was litigated in an abusive manner.  The Court should enter sanctions under each of these sections.

The district court dismissed each of these code sections as inapplicable after finding that NeoMagic was not a prevailing party due to Gorge's dismissal of NeoMagic pursuant to Rule 41(a).  Appx003-004 ("[T]he voluntary dismissal of NeoMagic does not render it a prevailing party and Rule 54 is facially inapplicable.").

### 1.    NeoMagic Did Prevail

Contrary to the district court's ruling, NeoMagic asserts that it did prevail in the action.  Specifically, the district court entered a temporary restraining order against all defendants that affected the legal relationship between NeoMagic and Gorge.  Appx669-684.  Gorge used that restraining order to seize over $300,000 of NeoMagic's money.  Appx782 ¶7, Appx786.  Gorge also had the power to essentially seize NeoMagic's entire marketplace by seizing the website (Appx677 ¶¶13, 14) and shutting down NeoMagic's business (Appx676 ¶10).  Upon being informed of the lawsuit by Gorge, NeoMagic fought back by filing two motions: (a) a Rule 12 motion to dismiss (Appx686); (b) an omnibus motion to dissolve the

restraining order, deny preliminary injunction, dissolve the service and discovery orders, etc. (Appx709).

At the time these motions were filed, NeoMagic's money was frozen and NeoMagic's business was placed in danger. Following service of the motions, the district court entered a preliminary injunction as to all the remaining defendants, an injunction that extended the terms of the restraining order. Appx873 at ECF No. 34. And the discovery and service orders remained in place as to those remaining defendants. *Id.*

On the other hand, NeoMagic was released from the restraining order, no injunction was issued against NeoMagic, Gorge was legally required to release NeoMagic's money, and no discovery was due within 14 days from NeoMagic. NeoMagic was released from numerous court-imposed obligations to Gorge.

This Court has recently considered "prevailing party" status in the context of a Rule 41(a) dismissal, in *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990 (Fed. Cir. 2020). In that case, the Court noted, "The Supreme Court has said that 'the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties. This change must be marked by judicial imprimatur.'" *Id.* at 992. This Court found that a Rule 41(a) dismissal did not require a court order and, hence, did not convey prevailing party status. *Id.* at 993.

Here, NeoMagic posits that the situation is different. Gorge had already obtained a court order harming NeoMagic's legal rights. Gorge had used that court order to seize over $300,000 from NeoMagic. After NeoMagic filed its motions, Gorge dismissed NeoMagic. When the dismissal became effective, the district court was not able to extend its restraining order into a preliminary injunction as it did with all of the remaining defendants. Thus, the dismissal clearly altered the legal relationship of the parties. Gorge changed from (a) a party holding over $300,000 of NeoMagic's money (based on a court order) that it was using to demand an extortive settlement into (b) a party that had no hold over NeoMagic's money nor ability to demand payment from NeoMagic.

This is a clear and "material alteration of the legal relationship of the parties" that was effected in this case. As this Court has held, "defendants need not prevail on the merits to be classified as a 'prevailing party.'" *Rainiere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018). In *Rainiere*, the defendants prevailed on a lack of standing defense; here, NeoMagic prevailed in lifting the restraining order and regaining its money, even where all the other defendants were subjected to a preliminary injunction and any ongoing seizures of their property. Accordingly, NeoMagic asks this Court to reverse the district court and determine that NeoMagic is a prevailing party.

If that determination is made, the following three statutory regimes provide for attorneys' fees based on the exceptional nature of the lawsuit against NeoMagic.

### 2.    35 U.S.C. §285

The patent statute provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. §285.

An exceptional case is "simply one that stands out with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District Courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S.Ct. 1749, 1756 (2014).

Attorneys' fees under 35 U.S.C.  §285 have been awarded where "plaintiffs failed to conduct an adequate investigation into infringement before filing suit." *ThermoLife Int'l LLC v. GNC Corp*., 922 F.3d 1347, 1362 (Fed. Cir. 2019).  One consideration that is important to an exceptional-case determination is whether the party seeking fees "provide[d] early, focused, and supported notice of its belief that it was subjected to exceptional litigation behavior."  *Stone Basket Innovations, LLC v. Cook Med. LLC*, 992 F.3d 1175, 1181 (Fed. Cir. 2018).

Moreover, "[a] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's determination under §285.*" SFA Sys., LLC v. Newegg Inc*., 793 F.3d 1344, 1350 (Fed. Cir. 2015).

As shown above, the case is exceptional both for its frivolous patent infringement claim and the pervasive misconduct by Gorge and its attorneys. Thus, if this Court determines that NeoMagic is a prevailing party, then it should reverse the district court's finding that the case was not exceptional.

### 3.    Section 35(a) of the Lanham Act – 15 U.S.C. §1117(a)

Under section 35(a) of the Lanham Act "the district court has authority to award attorneys' fees to the prevailing party in certain trademark cases, but only if the case is an 'exceptional' case." 15 U.S.C. §1117(a); *J&J Snack Foods, Corp. v. Earthgrains Co.*, Civil Action No. 00-6230(JBS), 2003 U.S. Dist. LEXIS 8040, *1 (D.N.J. May 9, 2003). The Lanham Act fee provision is "identical" to §285 of the Patent Act. *Octane*, 134 S. Ct. at 1756.

The Third Circuit deems a case exceptional where either 1) "there is an unusual discrepancy in the merits of the positions taken by the parties," or 2) "the losing party has litigated the case in an unreasonable manner." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314 (3d Cir. 2014).

Here, both of the Third Circuit's bases for an exceptional case finding apply. Gorge's Lanham Act positions were unusually frivolous. And Gorge's litigation against NeoMagic was unreasonable and vexatious from start to finish.

As shown above, the case is exceptional both for its frivolous Lanham Act claims and the pervasive misconduct by Gorge and its attorneys. Thus, if this Court determines that NeoMagic is a prevailing party, then it should reverse the district court's finding that the case was not exceptional.

### 4.    17 U.S.C. §505

The copyright act provides that "the court in its discretion may allow the recovery of full costs by or against any other party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. §505.

"In exercising its discretion to decide whether to award attorneys' fees, district courts are to consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Am. Bd. Of Internal Med. v. Von Muller*, 540 Fed. Appx. 103, 106-107 (3rd Cir. 2013) quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

Here, the district court clearly erred in finding there was no copyright assertion in the complaint. Instead, as noted above, Gorge plainly asserted copyright infringement of a non-existent copyright in the complaint. Gorge followed this with copyright assertions in its motion for injunction and in its email correspondence notifying NeoMagic of the sealed lawsuit. The district court ignored these assertions in finding: "Curiously, the Complaint does not assert any claims relating to copyrights." Appx004. A defendant must take the complaint as the defendant finds it; here, Gorge plainly stated that NeoMagic infringes its copyright, but Gorge has no copyright registration.

As shown above, the case is exceptional both for its frivolous copyright infringement claim and the pervasive misconduct by Gorge and its attorneys. Thus, if this Court determines that NeoMagic is a prevailing party, then it should reverse the district court's finding that the case was not exceptional.


Any of these fee-shifting provisions can serve to return NeoMagic closer to the position that it was in before Gorge initiated this frivolous and vexatious litigation. NeoMagic requests that this Court reverse the district court and enter a sanction of attorneys' fees under any or all of the provisions that apply.

## IV.    Amount of Fees

Gorge did not challenge the reasonableness nor the amount of fees requested by NeoMagic.  Nor did the district court find that any of the fees were unreasonable.  Accordingly, on reversal of the district court's order denying fees, this Court can order entry of a sanction of attorneys' fees in the full amount sought.

NeoMagic claimed a total amount of $57,660 in reasonable attorneys' fees. Appx863.

If that amount can be enhanced to account for attorneys' fees accrued on appeal, NeoMagic requests permission to submit an increased request that includes the appeal accruals.

## V.    Conclusion and Relief Sought

NeoMagic requests that the Court reverse the order of the district court and direct the district court to enter an award of attorneys' fees and costs in favor of NeoMagic in the amount of $57,660.

Alternatively, NeoMagic requests that the Court vacate the order denying attorneys' fees and costs and remand for further proceedings in accord with this Court's rulings.


Dated: October 25, 2021                    /s/ *Andrew T. Oliver*
                                           Andrew T. Oliver
                                           *Attorney for Appellant*
                                           *NeoMagic Corporation*

## Addendum Table of Contents

| Date | Description | Appendix Page(s) |
|---|---|---|
| 12/04/20 | Order Denying Motion for Attorneys' Fees | 001-012 |
| 04/09/21 | Order Certifying Final Judgment Under Rule 54(b) | 013-014 |
|  | U.S. Patent No. 7,309,198 | 015-021 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GORGE DESIGN GROUP LLC, *et al*,

               *Plaintiffs*,

    v.

SYARME, *et al*,

               *Defendants*.

Civil Action No. 2:20-cv-1384

Hon. William S. Stickman IV

## **MEMORANDUM ORDER**

WILLIAM S. STICKMAN IV, District Judge

On September 15, 2020, Plaintiffs filed a Complaint (ECF No. 2) and Motion for Temporary Restraining Order ("TRO") (ECF No. 5) against several defendants, including Defendant Neomagic Corporation, d/b/a www.mercadomagico.com ("Neomagic"). The Complaint and the motion asserted that Plaintiffs were owners of the intellectual property in a product called the "Ultimate Ground Anchor," which is, essentially, an anchor peg with a screw-shaped ground spike. The Complaint and the motion alleged that Defendants were online storefronts which advertised and sold counterfeit products that, *inter alia*, violated Plaintiffs' intellectual property and engaged in other actionable conduct. The Complaint asserted claims of Federal Unfair Competition (15 U.S.C. § 1125(a)), Patent Infringement (35 U.S.C. § 271(a)), Common Law Unfair Competition, and Common Law Trademark Infringement. The Motion for TRO asserted that Defendants' conduct constituted ongoing, immediate and irreparable harm. The Court granted the requested TRO and issued an order to show cause why a preliminary injunction should not issue on September 21, 2020. (ECF No. 18).

1

Neomagic entered its appearance and filed a Motion to Dismiss, an Omnibus Motion to Dissolve TRO and supporting briefs. (ECF Nos. 23, 24, 27, 28).  The Court held a hearing on the show cause order on October 5, 2020.  (ECF No. 29).  Counsel for Neomagic and Plaintiff informed the Court that they had reached an agreement in principle whereby Neomagic would be dismissed from the case, while retaining the right to file a motion seeking reimbursement of attorney fees.  Plaintiffs filed a Notice of Voluntary Dismissal of Neomagic on October 6, 2020. (ECF No. 31).  On October 20, 2020, Neomagic filed the instant Motion for Attorney Fees. (ECF No. 42).  Briefing is now complete, and the motion is ripe for adjudication by the Court.

Neomagic argues that fees are warranted based on a multitude of authorities including state and federal statutes, the Pennsylvania Rules of Professional Conduct and the common law—Federal Rule of Civil Procedure 54, 35 U.S.C. § 285, 15 U.S.C. § 1117, 17 U.S.C. § 505, Federal Rule of Civil Procedure Rule 11, the Court's inherent power, 28 U.S.C. § 1927, 42 Pa.C.S.A. § 2503, and Pennsylvania Rule of Professional Conduct 3.3.  Neomagic has taken the "kitchen sink" approach, but all of the authorities it cites in support of a fee award miss the mark.

Awards of attorney fees are the exception, rather than the rule, in our legal system.  As the Supreme Court has explained:

> Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule:  Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.  The American Rule has roots in our common law reaching back to at least the 18th Century, and statutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar legal principles.  We consequently will not deviate from the American Rule absent explicit statutory authority.

*Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (internal citations and quotations omitted).  Further, the Supreme Court noted that "[w]e have recognized departures from the American Rule only in 'specific and explicit provisions for the allowance of attorneys' fees

2

under selected statutes.'" *Id.* (citation omitted). Neomagic has not made a compelling argument that the long-established and deeply entrenched American Rule should be abandoned. While it cites to numerous bases for the Court to award fees, none are applicable, much less convincing.

Neomagic argues that it should be awarded attorney fees because Plaintiffs' action against it (and others) "was brought unreasonably, vexatiously, in bad faith and without evidentiary support." (ECF No. 43, p. 4). Plaintiffs respond by showing that Neomagic has advertised and sold a product that is nearly, if not completely, identical in form and that it did so by using photos of their product (some of which were taken by Plaintiff Erdely). This is not, however, the forum to adjudicate claims against Neomagic on their merits. Those claims have been dismissed. Plaintiffs' claims, their allegations and the material they offered in opposition to the Motion for Attorney Fees are relevant only to determine whether Neomagic has made a facial showing that would allow an award of fees (if otherwise applicable) under the authorities that it cites to get around the American Rule. With this in mind, the Court will address each alleged basis proffered by Neomagic in support of a fee award.

**A) Fed. R. Civ. P. 54**

Contrary to Neomagic's assertion, there is no basis for an award of fees under Fed. R. Civ. P. 54(d). As an initial matter, Rule 54 addresses the award of costs and, in limited circumstances, attorney fees to a prevailing party. In the context of this matter, Neomagic cannot be considered a prevailing party. "Unilateral, voluntary, and non-final action does not meet the prevailing party' standard. *Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598 (2001) (under Fair Housing Amendments Act and Americans with Disabilities Act); *RFR Industries, Inc. v. Century Steps, Inc.,* 477 F.3d 1348 (Fed.Cir.2007) (under Patent Act); *Oscar v. Alaska Dept. of Ed. And Early Development,* 541

**Appx003**

F.3d 978 (9th Cir. 2008) (under Individuals with Disabilities in Education Act); *Evans v. Chichester School Dist.,* 2008 WL 4610240 (E.D.Pa. Oct.15, 2008) (under 42 U.S.C. § 1988 and Rehabilitation Act)." *Hammill v. Bank of Am., N.A.*, 2013 WL 4648317, at *3 (W.D. Pa. Aug. 29, 2013), *aff'd*, 569 F. App'x 133 (3d Cir. 2014). *See also Rousseau v. Echosphere Corp.*, 2005 WL 2176839, at *5 (W.D.Pa. Aug. 30, 2005) (collecting cases and rejecting request for fee award under Rule 54 after voluntary dismissal). Thus, the voluntary dismissal of Neomagic does not render it a prevailing party and Rule 54 is facially inapplicable.

**B)     35 U.S.C. § 285; 15 U.S.C. § 1117; 17 U.S.C. § 505**

Neomagic also seeks a fee award under a number of federal statutes specifically governing intellectual property—35 U.S.C. § 285 (Patents); 15 U.S.C. § 1117 (Trademarks); and 17 U.S.C. §505 (Copyright). The statutes provide:

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

35 U.S.C. § 285.

> The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (in relevant part).

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

Curiously, the Complaint does not assert any claims relating to copyrights. For that reason alone, 17 U.S.C. § 505, part of the statutory regimen governing copyrights, is facially inapplicable and cannot serve as a foundation for a fee award.

4

**Appx004**

The two remaining statutes require as a threshold consideration that fees may only be awarded to a "prevailing party" and only in "exceptional cases." As explained above, Neomagic cannot meet the first prong. It is not a prevailing party and, therefore, cannot seek a fee award under 35 U.S.C. § 285 or 15 U.S.C. §1117.

Nor can Neomagic establish that this is an "exceptional case," as required by both statutes. The determination of whether a case is sufficiently "exceptional" as to warrant a fee award is left to the sound discretion of the district court. *See ADM Corp. v. Speedmaster Packaging Corp.* 525 F.2d 662, 664 (3d Cir. 1975). "An exceptional case is one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Spineology, Inc. v. Wright Medical Tech. Inc.*, 910 F.3d 1227, 1229 (Fed. Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). "District courts may determine whether a case is exceptional in a case-by-case exercise of their discretion, considering the totality of the circumstances." *Spineology*, 910 F.3d at 1229.

The Court holds that there is nothing exceptional about this case. In fact, this case has followed the same trajectory of many other cases in this District and in districts throughout the country in instances where a plaintiff discovers that its intellectual property has likely been pirated and identical or substantially similar knock-off products are being offered for sale from on-line platforms. To hold that this case is exceptional would topsy-turvy that term—elevating what is ordinary to extraordinary. It would erect an unwarranted barrier to plausible claims by legitimately injured Plaintiffs.

On a more granular level, there is nothing exceptional about this case, as asserted against Neomagic. First, the case is still in its infancy. Plaintiffs filed a Complaint that complies with

5

the requirements of the federal rules and appears to assert a facially plausible claim against Neomagic. Neomagic can argue (or could have argued if it was not voluntarily dismissed) that the product it was selling and the advertising for that product did not violate the patent at issue and did not infringe upon Plaintiffs' trademark, but the fact remains that Neomagic sold a product that appears to be identical to the Plaintiffs' and used photographs depicting the product that were plausibly claimed to have been identical to those used by Plaintiffs (and actually taken by one of the Plaintiffs). Whether, if the case would have proceeded to a determination on the merits, Plaintiffs would have ultimately prevailed against Neomagic is immaterial. Neither they nor any plaintiff is required to prove their case in their Complaint. The question here is whether—in the context of the litigation against Neomagic from inception to conclusion—there was something that rendered it exceptional. There was not. No fee is warranted under either 35 U.S.C. § 285 or 15 U.S.C. § 1117.

### C.    28 U.S.C. § 1927

Neomagic next argues that fees are warranted under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Again, Neomagic is attempting to fit a square peg into a round hole. This statute is inapplicable.

§ 1927 requires that the offending attorney be found to "multipl[y] the proceedings in any case unreasonably and vexatiously." Courts have held that the purpose of § 1927 is to deter unnecessary delays and abusive conduct in the course of ongoing litigation. The Supreme Court observed: "[b]ut § 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced

**Appx006**

by the substantive law. It is concerned only with limiting the abuse of court processes." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980). The body of caselaw interpreting § 1927 reveals that courts give full effect to the statutory language addressing the multiplication of proceedings "*in any case.*" In other words, § 1927 focuses on unreasonable vexatious conduct in the course of a case that is dilatory or incurs unreasonable expense or inconvenience. The statute does not apply to the initiation of a case. *See Gurman v. Metro Housing and Redevelopment Auth.*, 884 F.Supp.2d 895 (D. Minn. 2012) ("the Court notes that an attorney cannot be sanctioned under § 1927 for simply commencing a frivolous lawsuit. *See, e.g., Jensen v. Phillips Screw Co.,* 546 F.3d 59, 65 (1st Cir. 2008) ("[W]e join an unbroken band of cases across the courts of appeals holding that a lawyer cannot violate section 1927 in the course of commencing an action."); *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 435 (9th Cir.1996) ("The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927.").

§ 1927 is inapplicable to the case at bar. Plaintiffs did not engage in the type of misconduct addressed by the statute. They did nothing to vexatiously delay or prolong the litigation. They filed a Complaint and Motion for a TRO and, shortly thereafter, agreed to voluntarily dismiss the claims against Neomagic. The Court holds that there is no basis for fees under 28 U.S.C. § 1927.

### D.    42 Pa.C.S.A. § 2503

In addition to the federal statutes discussed above, Neomagic claims it is entitled to a fee award under Section 2503 of the Pennsylvania Judicial Code, 42 Pa.C.S.A. § 2503, which provides:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

(1) The holder of bonds of a private corporation who successfully recovers due and unpaid interest, the liability for the payment of which was denied by the corporation.

(2) A garnishee who enters an appearance in a matter which is discontinued prior to answer filed.

(3) A garnishee who is found to have in his possession or control no indebtedness due to or other property of the debtor except such, if any, as has been admitted by answer filed.

(4) A possessor of property claimed by two or more other persons, if the possessor interpleads the rival claimants, disclaims all interest in the property and disposes of the property as the court may direct.

(5) The prevailing party in an interpleader proceeding in connection with execution upon a judgment.

(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

(8) Any participant who is awarded counsel fees out of a fund within the jurisdiction of the court pursuant to any general rule relating to an award of counsel fees from a fund within the jurisdiction of the court.

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

(10) Any other participant in such circumstances as may be specified by statute heretofore or hereafter enacted.

42 Pa.C.S.A. § 2503. This statute may apply in federal court in diversity cases where state law applies. *See Transit Cas. Ins. Co. v. Nationwide Mutual Ins. Co.*, 537 F.Supp. 65, 71 (E.D.Pa. 1982). Although this case arises before the Court on federal question jurisdiction, Plaintiffs have asserted two supplemental common law claims. While the Court has not decided which state's law will apply to those claims, it will assume, without deciding, that Pennsylvania law should apply. That being said, § 2503 does not support a fee award.

§ 2503 will only permit an award of fees where a litigant "can establish that an action was brought arbitrarily, vexatiously, or in bad faith." *P. Liedtka Trucking, Inc. v. James H.*

8

*Hartman and Sons, Inc.*, 537 F.Supp. 381, 382 (E.D.Pa. 1982). The Pennsylvania Supreme

Court explained the contours of § 2503:

> An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. *Bucks County Board of Supervisors v. Gonzales,* 158 Pa. Commw. 664, 670–71, 632 A.2d 1353, 1356 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). *Accord Black's Law Dictionary* 104 (6th ed., reprinted 1993). An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. *Id.*; *Black's Law Dictionary, supra,* at 1565. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption. *Frick v. McClelland,* 384 Pa. 597, 600, 122 A.2d 43, 45 (1956) (*quoting McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936) *Bucks County Board of Supervisors, supra,* 158 Pa. Commw. at 670–71, 632 A.2d at 1356; *Black's Law Dictionary, supra,* at 139.
>
> By imposing these strict definitional guidelines, the statute serves not to punish all those who initiate legal actions which are not ultimately successful or which may seek to develop novel theories in the law. Such a rule would have an unnecessarily chilling effect on the right to bring suit for real legal harms suffered. *Dooley v. Rubin,* 422 Pa.Super. 57, 64, 618 A.2d 1014, 1018 (1993) (citation omitted). Rather, the statute focuses attention on the conduct of the party from whom attorney's fees are sought and on the relative merits of that party's claims. *See, e.g., Bykowski v. Chesed, Co.,* 425 Pa.Super. 595, 600, 625 A.2d 1256, 1259 (1993) (counsel fees appropriate where counsel for alleged slip-and-fall victims received seven requests for dismissal from purported owners of property and responded to none of them, and counsel failed to respond to purported owners' motion for judgment on the pleadings); *J.H. France Refractories Co. v. Allstate Insurance Co.,* 534 Pa. 29, 44, 626 A.2d 502, 510 (1993) (no counsel fees awarded against insurers in contesting their obligations to defend and indemnify when excessive pluralism and disparity existed in the decisions of the many courts which have entertained similar litigation).

*Thunberg v. Strause*, 682 A.2d 295, 299–300 (1996). As explained above, the Court holds that

Plaintiffs did not bring their case against Neomagic in an arbitrary, vexatious, fraudulent, bad

faith or corrupt manner. The Court holds that the claims brought against Neomagic were not

asserted for purposes of annoyance or harassment. Rather, the limited record shows that

Plaintiffs had a legitimate purpose in bringing their case. Whether they ultimately could have

prevailed on their claims is not before the Court. What is before the Court is that Neomagic sold a substantially similar product as Plaintiffs and did so using some of the same photographs as Plaintiffs. Plaintiffs had a good faith basis to pursue their claims. Moreover, the manner in which Plaintiffs pursued their case is substantially similar to a multitude of cases in this District and throughout the federal system where intellectual property holders attempt to protect their assets from alleged counterfeits being sold online. No fees are warranted under the Pennsylvania statute.

### E.     Fed. R. Civ. P. 11

Neomagic seeks sanctions under Fed. R. Civ. P. 11, but has not complied with the explicit procedures for pursuing such a sanction. Plaintiffs argue that Neomagic never provided them with the required 21 day safe-harbor notice, and Neomagic does not refute this point. The 21 day safe-harbor is required by Rule 11 and is non-negotiable. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d. Cir. 2008). Moreover, Rule 11(c)(2) expressly requires that a motion for sanctions under Rule 11 "must be filed separately from any other motion." Fed. R. Civ. P. 11(c)(2). Neomagic presented its purported Rule 11 motion for sanctions alongside a multitude of other grounds for relief. The Court holds that Neomagic has failed to present a cognizable request for sanctions under Rule 11.

### F.     Pennsylvania Rule of Professional Conduct 3.3

Neomagic also seeks fees under Pennsylvania Rule of Professional Conduct 3.3. This argument is meritless and, indeed, borders on frivolous. The very rules cited by Neomagic unequivocally provide:

> [19] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending

**Appx010**

litigation. ***The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.*** Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. ***Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty.***

Pa St. RPC Preamble and Scope [19] (emphasis added). Neomagic's argument under Rule 3.3 is without merit and warrants no further discussion by the Court.

### G. The Court's inherent power.

In the event that none of the many alleged grounds for a fee award should apply, Neomagic asks the Court to use its inherent authority to award fees. In *Chambers v. Nasco*, 501 U.S. 32, 45-46 (1991), the Supreme Court stated that a court has the inherent authority to impose sanctions when an attorney has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." The Supreme Court explained that "the imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 46. The Third Circuit has recognized that the use of the Court's inherent power should be rare and subordinate to sanctions set forth by statute or rule. *In re Prudential Ins. Co. Sales Practice Litigation Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) ("generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanction exist." (citation omitted)).

Here, as previously explained, none of the statutory, rule-based or other authorities cited by Neomagic provide a basis for a fee award. The Court will not exercise its extraordinary inherent powers. It does not find that Plaintiffs engaged in bad faith, vexatious or wanton conduct.[1]

AND NOW, this **3rd** day of December 2020, IT IS HEREBY ORDERED that Neomagic's Motion for Attorney Fees (ECF No. 42) is DENIED.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

[1] Perhaps Neomagic, itself, has approached or crossed that line in its zeal to obtain fees. It has, for example, cited to a statute governing copyrights where no claim under copyright statutes was asserted in the Complaint. It sought fees under Rule 11, despite failing to comply with the minimal procedures required to do so. It pointed to a Rule of Professional Conduct as a basis for fees, despite established authority (and the plain language of the Rules themselves) precluding the Rules to be used in that manner.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GORGE DESIGN GROUP LLC, *et al*,

           *Plaintiffs*,

    v.

SYARME, *et al*,

           *Defendants*.

Civil Action No. 2:20-cv-1384

Hon. William S. Stickman IV

## **ORDER OF COURT**

AND NOW, this 9th day of April 2021, the Court hereby GRANTS Defendant NeoMagic Corporation's (doing business as *www.mercadomagic.com*) Motion for Entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b).[1]  (ECF No. 105).  Plaintiffs' Notice of Voluntary Dismissal of Defendant MERCADOMAGICO pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) (ECF No. 31), is hereby CERTIFIED AS A FINAL JUDGMENT pursuant to Fed. R. Civ. P. 54(b).

Plaintiffs voluntarily dismissed its claims against NeoMagic and in so doing removed all causes of action against NeoMagic from the case.  No allegation exists that NeoMagic has any relationship with any of the other remaining defendants in this case, including the only Defendant who remains active – Meaning Xuansheng.  (ECF No. 31).

---

[1] The Defendant was identified as Mercadomagico in Plaintiff's Complaint.  (ECF No. 2). However, the Defendant refers to itself in its pleading as NeoMagic Corporation (doing business as *www.mercadomagic.com*).  Since the Defendant wishes to be referred to as NeoMagic, the Court will do so with the understanding that it is named as Mercadomagico on the docket.

1

There is no just reason to delay NeoMagic's appeal of the Court's December 4, 2020 denial of its motion for attorney fees and costs.[2] (ECF No. 76). The claims that remain in this case – i.e., Federal Unfair Competition, Patent Infringement, Common Law Unfair Competition and Common Law Trademark Infringement - are separate and distinct from the claims that NeoMagic wishes to appeal. Nothing that would occur in the pending case has any bearing on NeoMagic's appeal of the Court's denial of its motion for attorney fees and costs. In the eyes of the Court, delaying NeoMagic's appeal on such a discrete issue indefinitely to await final judgment as to completely unrelated issues and parties is unnecessarily prejudicial.

BY THE COURT:

_____

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

---

[2] NeoMagic appealed the Court's denial of its claims for attorneys' fees to United States Court of Appeals for the Third Circuit, and that appeal was docketed at No. 21-1074. It was then apparently transferred to the Federal Circuit. The Court is cognizant of its jurisdictional limitations under Federal Rule of Appellate Procedure 4. Due to the fact that the issue on appeal deals with attorney fees and costs and the Third Circuit has already noted that the order "appealed does not appear to dismiss all claims as to all parties, has not been certified under Fed. R. Civ. P. 54(b), and does not appear to be otherwise appealable," (ECF No. 105-2) the Court offers this order as a means of judicial efficiency and clarity. Had it been requested prior to the filing of the appeal the Court most certainly would have issued the exact same order.

2

US007309198B1

## (12) United States Patent
### Brown

(10) Patent No.: **US 7,309,198 B1**
(45) Date of Patent: **Dec. 18, 2007**

(54) **REUSABLE THREADED TIE DOWN**

(76) Inventor: **David J. Brown**, 145 Rue Cezzan, Lavonia, GA (US) 30553

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 94 days.

(21) Appl. No.: **11/287,877**

(22) Filed: **Nov. 28, 2005**

(51) **Int. Cl.**
  *B61D 45/00*    (2006.01)
(52) **U.S. Cl.** ..................................... **410/101**
(58) **Field of Classification Search** ................ 410/101, 410/96
  See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,717,147 A * 1/1988 Rochelle ...................... 482/93

D347,980 S * 6/1994 Butch ............................. D8/1
D381,892 S   8/1997 Porter et al.
D398,363 S * 9/1998 LoBue ..................... D21/840
D492,586 S   7/2004 Rimer, Jr.

* cited by examiner

*Primary Examiner*—H Gutman
(74) *Attorney, Agent, or Firm*—J. Bennett Mullinax, LLC

(57) **ABSTRACT**

A reusable tie down is provided having a threaded portion for insertion in soil along with an arcuate head defining an aperture for securing a rope or line to the tie down. The tie down is constructed of a high impact, high tensile strength polycarbonate which may be deformed under a heavy load and then returned to a normal shape by the application of heat.

**5 Claims, 3 Drawing Sheets**





**FIG. 1**



**FIG. 2**

Case 2:21-cv-16934-WJM Document 19 Page 95 of 101 Filed 10/25/2021 of 9



**FIG. 3**         **FIG. 4**



**FIG. 5**

US 7,309,198 B1

| 1 | 2 |

# REUSABLE THREADED TIE DOWN

## FIELD OF THE INVENTION

This invention is directed towards a reusable threaded tie down. The tie down includes a protective sheath which can be used as a handle for insertion and removal of the tie down into sand, soil, gravel, and similar materials. The tie down is suitable for a variety of uses including tethers, beach umbrellas, tent stakes, support stakes for new trees and shrubs, and pet tie downs.

## BACKGROUND OF THE INVENTION

This invention relates to threaded or helical tie downs for use in soil, lawns, campgrounds, and beaches. As seen in reference to U.S. Pat. Nos. D381892 and D492586, the specifications of which are incorporated herein by reference, it is known to provide a threaded structure which includes a bracket or similar structure through which a rope, wire, or similar line may be attached.

Many of the threaded tie downs in the prior art are provided by metal or rigid plastics which are subject to rust, breakage, or permanent deformation if bent. Further, the cleat, head, or other attachment point of the tie down frequently has either a shape, contour, or outer dimensions which render it unsuitable for certain applications. For instance, animal tie downs are often used in association with a length of chain. The chain will frequently entangle around the attachment head of the tie down, interfering with the animal's range of movement. Further, many tie downs have an attachment head which is easily damaged if accidentally struck, while other designs pose an injury risk because of the shape of the head should one trip and/or land on an installed tie down.

Accordingly, there remains room for improvement and variation within the art.

## SUMMARY OF THE INVENTION

It is one aspect of at least one of the present embodiments to provide for a threaded tie down which can be manually inserted and removed in a variety of soil types.

It is yet another aspect of at least one of the present embodiments to provide for a helical tie down which has a protective sheath surrounding the threaded portion of the tie down, the sheath further providing a handle for insertion through the head of the tie down to facilitate the installation and removal of the tie down from a substrate.

It is a further aspect of at least one embodiment of the present invention to provide for a helical tie down molded from a high impact polycarbonate plastic and having a tensile strength in excess of 22,000 pounds.

It is yet a further aspect of at least one embodiment of the present invention to provide for a helical tie down having a threaded portion attached to a head portion, the head portion containing an opening therethrough for securing a line, rope, or similar structure, the tie down head having a smooth, curved exterior surface.

It is a further aspect of at least one embodiment of the present invention to provide for a helical tie down which is provided from a high impact elastic polycarbonate which allows the tie down to be bent at an angle in excess of 30° and which can be restored to the original shape once the load is removed.

These and other features, aspects, and advantages of the present invention will become better understood with reference to the following description and appended claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

A fully enabling disclosure of the present invention, including the best mode thereof to one of ordinary skill in the art, is set forth more particularly in the remainder of the specification, including reference to the accompanying drawings.

FIG. 1 is an upper perspective view of a helical anchor of the present invention.

FIG. 2 is an elevational view of a helical anchor as seen in FIG. 1.

FIG. 3 illustrates the helical anchor with a protective sheath in place surrounding the threaded portions of the helical anchor.

FIGS. 4 and 5 illustrate placement of the protective sheath through the head of the helical anchor to facilitate the insertion and removal of the helical anchor into the soil.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Reference will now be made in detail to the embodiments of the invention, one or more examples of which are set forth below. Each example is provided by way of explanation of the invention, not limitation of the invention. In fact, it will be apparent to those skilled in the art that various modifications and variations can be made in the present invention without departing from the scope or spirit of the invention. For instance, features illustrated or described as part of one embodiment can be used on another embodiment to yield a still further embodiment. Thus, it is intended that the present invention cover such modifications and variations as come within the scope of the appended claims and their equivalents. Other objects, features, and aspects of the present invention are disclosed in the following detailed description. It is to be understood by one of ordinary skill in the art that the present discussion is a description of exemplary embodiments only and is not intended as limiting the broader aspects of the present invention, which broader aspects are embodied in the exemplary constructions.

In describing the various figures herein, the same reference numbers are used throughout to describe the same material, apparatus, or process pathway. To avoid redundancy, detailed descriptions of much of the apparatus once described in relation to a figure is not repeated in the descriptions of subsequent figures, although such apparatus or process is labeled with the same reference numbers.

As best seen in reference to FIGS. 1 and 2, a threaded tie down 10 is provided having a head portion 20 and a shaft 30. The head 20 has a width which is approximately twice its thickness. Further, the width of the head defines a generally arcuate exterior surface which is devoid of any sharp angles or other surface features. An aperture 22 is defined through the length of the head 20, aperture 22 providing a location for a thread, rope, or other similar article to be attached to the tie down 10. As further seen in reference to FIGS. 1 and 2, the shaft 30 further defines helical threads 32 which extend from a position adjacent a tapered point 34 to where shaft 30 meets with head 20. As seen in reference to FIG. 2, the helical threads 32 are positioned approximately 18/32 of an inch from the adjacent winding as indicated by reference line "A". Further, threads 32 define smooth, exterior edge wall surfaces which increase the strength and durability of the helical threads 32.

Case 2:21-cv-16984-WJM Document 19 Page 98 of 101 Filed 10/25/2021

US 7,309,198 B1

**3**

As seen in reference to FIG. **2**, the helical threads **32** have a thickness "C" which is about 0.5 inch. The helical threads have a pitch of about 9 windings per foot and are wound at an approximate 45° angle relative to an axis of shaft **30**. As also seen in reference to FIG. **2**, the thickness "C" of the helical windings, in combination with the distance "A" between the adjacent helices, are such that a significant portion of at least about 50% of the shaft **30** is not covered with the helical threads **32**. The combination of the smaller thickness between the diameter of shaft **30**, the outer diameter of threads **32**, the smooth edge wall surfaces, and the at least about 50% of the gap distance "A" represents a useful balance of dimensions that facilitates the insertion of the threaded tie down into a variety of substrates while giving the threaded tie down the flexibility to bend under heavy loads without permanent deformation or damage to the helical tie down.

The shaft **30**, as seen by reference line "B" in FIG. **2** has a diameter of approximately ½" while the outer diameter of the shaft **30** including the helical threads **32** has a thickness of approximately 1⅛" as seen by reference line "D". The outer diameter of helical threads **32** gradually increases such that the outer diameter "D" when measured below the head **20** is approximately ½₂" of an inch greater than the diameter when measured near the tip. The slight taper of the threads facilitates the insertion and provides for an enhanced anchoring force of the tie down **10** when inserted into a soil substrate.

As seen in reference to FIG. **3**, a shaft **40** is provided which may function as both a storage tube and a handle. In FIG. **3**, the shaft **30** may be inserted into the hollow sheath **40**, a portion of sheath **40** extending past the tip **34** positioned over the threaded portion of the tie down **10**.

The sheath **40** may be provided by a length of hollow PVC pipe. Preferably, the inner diameter of the PVC pipe is slightly greater than the outer diameter of the shaft **30** and helical threads **32** such that when the tie down **10** is inserted into the length of sheath **40**, a tight friction fit is provided which keeps the respective components in place until withdrawn by the user.

As seen in reference to FIG. **4**, when the sheath **40** is removed from the shaft **30**, the sheath **40** may be inserted through aperture **22** so as to provide a handle useful for the insertion and removal of the tie down **10** relative to a soil substrate. As seen in reference to FIG. **5**, the sheath **40** allows for greater leverage to be applied for insertion (and removal) of the tie down **10** into the soil.

The tie down **10** may be used in a variety of soil types and fulfill a number of different functions. The tie down **10** is preferably made of a high impact polycarbonate which may be used to injection mold the tie down **10**. Suitable polycarbonates include high flow polycarbonates available from DuPont. Other resins which are believed useful include high impact acrylonitrile butadiene styrene (ABS) resins and high density polyethylene resins.

In one embodiment of tie down **10** formed from a high impact polycarbonate, the overall length of the tie down is approximately 13" having a threaded outer diameter of approximately 1⅛". The embodiment described above exhibits a tensile strength of over 22,000 lbs. In addition, a 4,000 lb. force may be applied at a 30° angle without breaking the helical tie down. When subjected to strong forces, the helical tie down may bend in response to the forces. However, upon removal of the force, subsequent warming of the tie down to a temperature of about 100° F. will restore the tie down **10** to its original shape.

**4**

The tie down **10** is able to function in a wide variety of substrates. The tie down **10** can easily be inserted into a sandy beach where it can be used to tether a beach umbrella, shade canopies, or other articles which require a tether to prevent being blown in the wind. The tie down **10** is also useful as a tool for anchoring tents and other camping equipment. Many commercial campgrounds place tent pads on a gravel bed. The tie down **10** is able to be inserted into the gravel substrate without bending or breaking, unlike conventional metal pins, metal stakes, and/or plastic pegs.

The sheath **40** provides a protective sheath which allows the safe transport and handling of the tie down **10** while also providing a useful handle for the insertion and removal of the tie down. The sheath **40** supplies sufficient torque that installation and removal of the tie down can be accomplished without resorting to hammering or side-to-side "rocking" of the tie down in order to remove it.

The arcuate, rounded shaped head **20** provides for a smooth attachment point which does not fray or abrade ropes or other materials used to fasten an object to the tie down **10**. The large, rounded shape head is also less likely to cause injury if stepped upon.

The arcuate shape of head **20** has additional advantages when tie down **10** is used as a tether for an animal. The smooth exterior shape of head **20** prevents the cord, chain, or other tether from binding or being wrapped around the head **20**. As a result, the movement of the animal is not unduly restricted by having the tether bound or wrapped around a tie down. The shape of the head **20** allows use of the tie down **10** as a tether without the necessity of a swivel which is often required in other prior art designs to prevent entanglement between the tether and the tie down **10**.

As is readily appreciated by one having ordinary skill in the art, the size and dimensions of the illustrated embodiment can be varied for various needs. For instance, smaller diameter and smaller height tie downs may be used for recreational tent camping. Larger tie downs, such as the described embodiment, are useful as a tether in sandy soils, having sufficient height and width to tightly adhere to the loose soil.

Tie downs **10** may be used as a bank or beach cleat to attach or stabilize a boat. Further uses include use as landscaping tethers for positioning new trees and shrubs. The tie down **10** may also be used as temporary markers for fence and post layouts, measurement of property lines, construction wall layouts, and establishing plant bed boundaries. Since the tie downs **10** are not driven by a hammer, the use of tie downs significantly reduces the hazard of puncturing a below ground cable or pipe.

Tie downs **10** may also be used as a convenient way of staking out a volley ball or badminton net as well as providing visible markers for various construction purposes, such as marking utility lines, boundary lines, and other semi-permanent marking systems.

Although preferred embodiments of the invention have been described using specific terms, devices, and methods, such description is for illustrative purposes only. The words used are words of description rather than of limitation. It is to be understood that changes and variations may be made by those of ordinary skill in the art without departing from the spirit or the scope of the present invention which is set forth in the following claims. In addition, it should be understood that aspects of the various embodiments may be interchanged, both in whole, or in part. Therefore, the spirit and scope of the appended claims should not be limited to the description of the preferred versions contained therein.

US 7,309,198 B1

What is claimed is:

**1**. A tie down comprising:

a shaft;

a plurality of threads operatively disposed on an exterior of said shaft;

a head, said head defining an arcuate exterior surface, said head further defining a bore therethrough extending through a width of the head; and,

a sleeve positionable between a first position as a sheath engaging an exterior of the shaft and a second position wherein said sleeve is inserted through said bore.

**2**. The tie down according to claim **1** wherein said tie down is injection molded from a material selected from the group consisting of high flow polycarbonates, high impact, acrylonitrile butadiene styrene and high density polyethylene.

**3**. The tie down according to claim **1** wherein said plurality of threads have a pitch of approximately 1 winding per about 1.25 inches.

**4**. The tie down according to claim **1** wherein said threads are wound about said shaft at an angle of approximately 45°.

**5**. A tie down comprising:

a shaft;

a plurality of threads having a wind angle relative to said shaft of about 45° and operatively disposed on an exterior of said shaft, said threads having a thickness of about 0.5 inches and providing an outer diameter of said threads and said shaft of substantially about 1.2 inches;

a head defining an arcuate exterior surface, said head further defining a bore therethrough extending through a width of the head; and,

a sleeve positionable between a first position as a sheath engaging an exterior of the shaft and a second position wherein said sleeve is inserted through said bore.

\*    \*    \*    \*    \*

## Certificate of Compliance

The undersigned certifies under Fed. R. App. P. 32(a) and Federal Circuit Rule 32(a) that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) as modified by Federal Circuit Rule 32(a).

Exclusive of the Fed. R. App. p. 32(f) and Federal Circuit Rule 32(b) exempted portions of the brief—*i.e.*, cover page, certificate of interest, table of contents, table of citations, statement of related cases, statement regarding oral argument, signature bloc, addendum in initial appellant or petitioner brief with corresponding appendix pagination (judgment, order or decision in question, opinion, memorandum, or findings and conclusions support it and patents-in-suit), certificates of counsel, and proof of service —this brief contains 13,988 words, which is less than the 14,000 words for opening briefs and 7,000 words for reply briefs under Federal Circuit Rule 32(a).

The brief was prepared in proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.  The undersigned relied on the word count feature of this word processing system as the basis for this certificate as permitted by Fed. R. App. P. 32(g)(1).

Dated: October 25, 2021              /s/*Andrew T. Oliver*
                                      Andrew T. Oliver
                                      *Attorney for Appellant*
                                      *NeoMagic Corporation*

**Certificate of Service**

I certify that, on October 25, 2021, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Federal Circuit using the CM/ECF System and served on all counsel of record via electronic mail.

Dated: October 25, 2021 /s/ *Andrew T. Oliver*

Andrew T. Oliver
*Attorney for Appellant*
*NeoMagic Corporation*